(No. 48578.—

GTE AUTOMATIC ELECTRIC, INC., Appellant, v. ROBERT H. ALLPHIN, Director of Revenue, Appellee.

*Opinion filed Sept. 20, 1977.—Rehearing denied Nov. 23, 1977.*

William P. Sutter and Michael F. Duhl, of Hopkins, Sutter, Mulroy, Davis & Cromartie, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield (John D. Whitenack, Assistant Attorney General, of Chicago, of counsel), for appellee.

William D. Dexter, General Counsel, of Olympia, Washington (Eugene F. Corrigan, of Boulder, Colorado, of counsel), for *amici curiae* the Multistate Tax Commission *et al.*

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, GTE Automatic Electric, a Delaware corporation, appealed from the judgment of the circuit court of Cook County entered in favor of defendant, Robert H. Allphin, Director of Revenue, upon allowance of his motion to dismiss. This action, brought by plaintiff "in its own behalf and in a representative capacity on behalf of a class of all similarly situated taxpayers" seeks a judgment declaring that certain of its sales should be excluded in computing the fraction of its business income to be allocated to Illinois under article 3 of the Illinois Income Tax Act (Ill. Rev. Stat. 1973, ch. 120, pars. 3—301 through 3—307) and to enjoin defendant from so allocating its income. Holding that plaintiff had not exhausted its administrative remedy and that this was not a proper class action, the circuit court dismissed, the appellate court affirmed (38 Ill. App. 3d 910), and we allowed plaintiff's petition for leave to appeal.

Involved here are the construction of section 304(a) of the Illinois Income Tax Act (ch. 120, par. 1—101 *et*

*seq.*) and Regulation 304—4(d) promulgated by the Department of Revenue pursuant to section 1401 of the Act (ch. 120, par. 14—1401). In pertinent part section 304(a) provides that the multistate business income of a person other than a resident of Illinois (under section 1501(a)(20) (ch. 120, par. 15—1501(a)(20)) of the Act every corporation is a person "other than a resident") "shall be apportioned to this State by multiplying the income by a fraction, the numerator of which is the sum of the property factor (if any), the payroll factor (if any) and the sales factor (if any), and the denominator of which is 3 reduced by the number of factors which have a denominator of zero." Section 304(a)(3) defines the sales factor as follows:

"(3) Sales factor.

(A) The sales factor is a fraction, the numerator of which is the total sales of the person in this State during the taxable year, and the denominator of which is the total sales of the person everywhere during the taxable year.

(B) Sales of tangible personal property are in this State if:

(i) The property is delivered or shipped to a purchaser, other than the United States government, within this State regardless of the f.o.b. point or other conditions of the sale; or

(ii) The property is shipped from an office, store, warehouse, factory or other place of storage in this State and either the purchaser is the United States government or the person is not taxable in the state of the purchaser.

(C) ***" Ill. Rev. Stat. 1973, ch. 120, par. 3—304.

In its complaint, plaintiff alleged that pursuant to section 304(a)(3) and regulations 304—4(d)(1)(A) and (B), in computing its Illinois business income for each of its taxable years ended December 31, 1969, 1970 and 1971, it included in the numerator of its sales factor all sales of tangible personal property delivered to or shipped to

purchasers in Illinois and all sales of such property shipped from its Illinois inventory to purchasers in States in which it is not taxable; that in an audit of plaintiff's Illinois income tax returns for those taxable years the Department of Revenue had taken the position that the numerator of plaintiff's sales factor should be increased by including (1) all sales of tangible personal property shipped by plaintiff's supplier from the supplier's inventory in Illinois to purchasers in States in which plaintiff is not taxable and (2) all sales of tangible personal property shipped by plaintiff's supplier from the supplier's inventory in a State in which plaintiff is not taxable to purchasers in States in which plaintiff is not taxable and that the Department demanded that plaintiff supply it with the amounts of those sales. Plaintiff alleged that its records "are not sufficient for it readily to determine the amounts of these two classes of sales" and that the determination of the amounts would cost many thousands of dollars, would require months to complete and "would be a useless act if such sales are not required to be included in the numerator of [its] sales factor." It alleged further that an actual controversy, within the meaning of section 57.1 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 57.1), exists between plaintiff and defendant as to whether the Act requires plaintiff to include in the numerator of its sales factor either of those classes of sales, and that if the Act does require that either of them be included, there is an actual controversy between plaintiff and defendant as to whether the Act in this respect is unconstitutional, in that it violates the commerce clause of the Federal Constitution and the due process clause of the Federal and Illinois constitutions. Plaintiff asked that the Act be construed as not requiring that either of the two classes of sales be included in the numerator of its Illinois sales factor or alternatively that any requirement of such inclusion be declared unconstitutional; that defendant be

permanently enjoined from requiring plaintiff to determine the amounts of the classes of sales in dispute; and that the court find this to be a proper class action.

Defendant moved to dismiss on the grounds that the action was premature because plaintiff had not permitted the Department to conduct an examination to determine the correct amount of tax liability pursuant to section 904(a) of the Act (ch. 120, par. 9—904(a)) nor given the Department access to information or records necessary to make an administrative determination (ch. 120, par. 12—1201); that plaintiff had neither exhausted its administrative remedy under the Act nor alleged facts sufficient to excuse its failure to do so; that plaintiff was seeking an audit of its returns by the court as a substitute for an audit by defendant; "that declaratory judgment is not an available remedy for an anticipated interpretation or administrative determination"; and that this is an improper class action.

The circuit court denied the motion, defendant answered, plaintiff moved for summary judgment, and defendant filed objections to plaintiff's motion. After considering memoranda and oral argument the circuit court denied plaintiff's motion for summary judgment and dismissed the action. Plaintiff appealed and the appellate court affirmed.

We consider first whether the appellate and circuit courts correctly held that this action was premature because plaintiff had failed to exhaust its remedy at law by way of the administrative procedures provided in the Act (ch. 120, pars. 12—1201 through 12—1204) and the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, par. 264 *et seq.*). Plaintiff contends that in bringing this action it had relied upon the *"Owens* exception" and that under *Sta-Ru Corp. v. Mahin,* 64 Ill. 2d 330, 334, "the merits of this case should be decided on the basis of *Owens."* The so-called *"Owens* exception" was enunciated

in *Owens-Illinois Glass Co. v. McKibbin,* 385 Ill. 245, 256:

> "[T] he enjoining of the collection of illegal taxes constitutes an exception to the general rule that equity will not take jurisdiction of a cause when there is an adequate remedy at law. It is established that where a tax is unauthorized by law, or where it is levied upon property exempt from taxation, equity will take jurisdiction and enjoin the collection of the tax."

In *Illinois Bell Telephone Co. v. Allphin,* 60 Ill. 2d 350, it was held that where an administrative remedy is available under the Administrative Review Act the *Owens* exception would no longer apply. However, because Illinois Bell, in seeking equitable relief without exhausting its administrative remedy, had relied on *Owens* and subsequent decisions which had followed it, the court held that fundamental fairness required that the *Owens* exception should apply and the case be decided on its merits.

The appellate court recognized that in *Illinois Bell* the overruling of the *Owens* exception was given prospective effect (60 Ill. 2d 350, 359), but it stated "the fundamental fairness which dictated that result was intended to be *sui generis* [in *Illinois Bell*] and not a broad grant of relief to all similar litigants with suits pending throughout the State at that time." (38 Ill. App. 3d 910, 914.) After the appellate court opinion had been filed, this court decided *Sta-Ru Corp. v. Mahin,* 64 Ill. 2d 330, and said:

> "Sta-Ru, relying on the *Owens* exception, filed its complaint for an injunction in October of 1972, and the circuit court's decree was entered in April of 1974. Our opinion in *Illinois Bell* was not handed down until March of 1975. Thus, the trial court's judgment was entered at a time when the authority of *Owens* was clear. Under these circumstances we judge that the merits of this case should be decided on the basis of *Owens.*" 64 Ill.

2d 330, 334.

Here plaintiff, relying on the *Owens* exception, filed its complaint for an injunction on July 18, 1973, and the trial court's decree was entered on January 22, 1975, two months prior to the decision of *Illinois Bell*. Although plaintiff has not exhausted its adequate administrative remedy, we follow *Sta-Ru Corp. v. Mahin,* 64 Ill. 2d 330, and consider the merits.

Plaintiff contends that it was "entitled to summary judgment as a matter of law" and that the circuit court erred in denying its motion. Defendant argues that the motion was properly denied for the reason that there are at least six genuine issues of material fact which must be decided. We agree that the circuit court correctly denied plaintiff's motion for summary judgment but not for the reasons urged by defendant. It may be that all of the fact issues enumerated by defendant must be decided prior to determining plaintiff's tax liability, but they need not be decided in this case. For the purposes of this opinion it is sufficient that plaintiff alleged and defendant agreed that during the years involved plaintiff made the types of sales in question, that although they were included in the denominator of plaintiff's sales factor as part of the "Total Everywhere," they were not included in the numerator of the sales factor as sales "Within Illinois" and that defendant has consistently maintained that the two classes of sales must be included in the numerator of plaintiff's sales factor.

Section 304(a)(3)(A) of the Illinois Income Tax Act, which provides for the three-factor formula for the allocation and apportionment of the income of a corporation doing a multistate business, contains the language of section 9 and section 304(a)(3)(B) contains the language of section 16 of the Uniform Division of Income for Tax Purposes Act. Pursuant to leave, 11 States and the Multistate Tax Commission have filed an *amicus curiae*

brief in the appellate court, and in this court, dealing with the substantive issues presented. The Multistate Tax Commission is the administrative agency of the Multistate Tax Compact entered into by 21 States as full members and 13 States as associate members, all of whom have enacted statutes in the language of the uniform act. The question whether the two types of "direct" or "drop-shipment" sales which have been excluded from plaintiff's sales "Within Illinois" numerator and included in its "Total Everywhere" denominator should be included in its "Within Illinois" numerator or deducted from its "Total Everywhere" denominator is one of first impression in the United States.

The purpose of the uniform act and article 3 of the Illinois act is to assure that 100%, and no more or no less, of the business income of a corporation doing multistate business is taxed by the States having jurisdiction to tax it. Prior to its adoption by any State, Professor William J. Pierce, the principal author of the uniform act, commented:

> "At the present time, those states levying net income taxes or taxes measured by net income have an amazing variety of formulas for allocating income, and these vary not only in respect to the basic factors used, such as property, payroll, sales, and manufacturing costs, but also in respect to the specific details of each factor. Therefore, interstate businesses face the initial problem of accumulating several different kinds of accounting data in order to report their taxes in the several states in which they are doing business. More important, however, is the fact that because of the differences in the formulas, it is possible for interstate businesses to be taxed on more than 100 per cent of their net income or, in some cases, substantially less, depending, of course, on the particular states in which the business is subjected to such taxes.
>
> The uniform act, if adopted in every state having a net income tax or a tax measured by net income, would assure that 100 per cent of income, and no more or no

less, would be taxed." Pierce, *The Uniform Division of Income for State Tax Purposes,* 35 Taxes 747, 748 (1957); see also Lynn, *The Uniform Division of Income for Tax Purposes Act,* 19 Ohio St. L.J. 41 (1958); Wilkie, *Uniform Division of Income for Tax Purposes,* 37 Taxes 65 (1959).

Section 304(a)(3)(B) provides that unless the purchaser is the United States government, sales of property delivered to a purchaser in Illinois are included in the "Within Illinois" numerator of the sales factor. It provides further that if "the purchaser is the United States government or the person is not taxable" in the destination State, sales of property shipped from Illinois to another State are also included in the numerator. Not mentioned in the statute are the "direct" or "drop-shipment" sales in which orders received by plaintiff for tangible personal property were filled by plaintiff's suppliers shipping such property to plaintiff's customers, to a destination outside Illinois, from an f.o.b. point also outside Illinois, and where plaintiff was not taxable either in the State of origin or destination. We agree with plaintiff that under a literal reading of section 304(a)(3) it may include such sales in the "Sales Everywhere" denominator (ch. 120, par. 304(a)(3)(A)) and need not include them in the "Within Illinois" numerator of its sales factor (ch. 120, par. 304(a)(3)(B)).

Defendant concedes that this type of "drop-shipment" sale, where both the origin and destination of the sale are outside Illinois, does not fall within the statutory definition of a sale within Illinois contained in section 304(a)(3)(B), but argues that such sales should be considered "Within Illinois" sales and included in the numerator of plaintiff's sales factor under section 301(c)(2) of the Act (ch. 120, par. 3—301(c)(2)), which in pertinent part provides:

"(2) Unspecified items. Any item of income or

deduction which was taken into account in the computation of base income for the taxable year by any person other than a resident and which is not otherwise specifically allocated or apportioned pursuant to section 302, 303 or 304 ***:

\*\*\*

(B) In the case of a corporation, shall be allocated to this State if the taxpayer had its commercial domicile in this State at the time such item was paid, incurred or accrued."

We do not agree. Section 301(c)(2) deals with unspecified items of income which are not specifically allocated under sections 302, 303 and 304. The income from the sales in question is "business income" (ch. 120, par. 15–1501(a)(1)), not an unspecified item of income, and section 304 deals specifically with the allocation and apportionment of "business income."

*Amici curiae* agree that under a literal reading of section 304(a)(3)(B) a "drop-shipment" sale where both the origin and destination of the sale are outside Illinois is not a sale in Illinois. They argue that the purpose of the provisions of the uniform act and the Illinois act for the allocation and apportionment of a corporation's multistate business income is to tax 100% of that income, no more and no less, and that unless these sales which are not taxable either in the State of origin or the State of destination are considered sales "within Illinois," the intent of the General Assembly will be thwarted and plaintiff will enjoy a tax loophole. *Amici* suggest that, in order to give effect to the manifest legislative intent, we should read the phrase "The property *** shipped from an office" in section 304(a)(3)(B)(ii) to refer to the in-State sales activity of the seller rather than just to the physical shipment of the goods. In the alternative, it is argued that in order to carry out the legislative intent, if these "drop-shipment" sales are properly excluded from the "Within Illinois" numerator of the sales factor, they

should also be excluded from the denominator of "Sales Everywhere."

Section 304(a)(3)(B) does not make a "drop-shipment" sale, where both the origin and destination of the sale are outside this State, and the taxpayer is not taxable in either of those States, a sale "Within Illinois." Assuming that the General Assembly intended that all of plaintiff's multistate business income be taxed in a fair and equitable manner by those States having jurisdiction to tax it, and did not intend any overlap or gap in the taxing of such income, it nevertheless failed to take into account this type of sale, and there is a gap in section 304(a)(3)(B). Because of the conclusion which we reach, it is not necessary that we decide whether the gap should be closed by the General Assembly, as plaintiff argues, or by judicial construction as *amici curiae* contend.

Both defendant and *amici curiae* contend that under section 304(e) defendant has administrative authority to include in the numerator of the sales factor plaintiff's out-of-State "drop-shipment" sales in which plaintiff is not taxable either in the State of origin or the State of destination. Section 304(e) in pertinent part, provides:

"If the allocation and apportionment provisions of subsections (a) through (d) do not fairly represent the extent of a person's business activity in this State, the person may petition for, or the Director may require, in respect of all or any part of the person's business activity, if reasonable:

(1) Separate accounting;

(2) The exclusion of any one or more factors;

(3) The inclusion of one or more additional factors which will fairly represent the person's business activities in this State; or

(4) The employment of any other method to effectuate an equitable allocation and apportionment of the person's business income." Ill. Rev. Stat.. 1973, ch. 120, par. 3—304(e).

Plaintiff argues that section 304(e) is concerned with

the overall method of apportionment under the three-factor formula in section 304(a) and does not permit the partial application of a particular factor—the factor must either be included as provided in the statute or it must be totally excluded.

Subsection 304(a)(3) does not, by its terms, apply to plaintiff's "drop-shipment" sales in which it is not taxable in either the State of origin or destination, and it is clear that its provisions for allocation of business income cannot, therefore, fairly reflect the extent of plaintiff's business activities in this State. In our opinion there is a clearly demonstrated legislative intent to allocate and apportion the business income from the multistate operations of a corporation with those other States having jurisdiction to tax such income in such manner that there is neither overlap nor gap in taxing all of such income derived from the multistate business. Section 304(e) provides that defendant has authority to require in respect to "any part of the person's business activity, if reasonable *** [t]he employment of any other method to effectuate an equitable allocation and apportionment of the person's business income." We are of the opinion that as to that part of plaintiff's business activity which does not fall within subsection (a), defendant may utilize section 304(e) to effectuate the legislative intent of avoiding either an overlap or gap in allocating and apportioning all the business income from plaintiff's multistate operations. The fact that defendant's inclusion in the numerator of plaintiff's out-of-State "drop-shipment" sales, for which it is not taxable either in the State of origin or destination, and its inclusion of the total sales everywhere in the denominator of its sales factor, effects the same allocation of multistate business income as would result if such sales were assigned to the numerator of the sales factor under section 304(a) does not serve to diminish defendant's authority under section 304(e).

Citing *McLeod v. J. E. Dilworth Co.,* 322 U.S. 327, 88 L. Ed. 1304, 64 S. Ct. 1023, plaintiff argues that to construe the statute to hold that its out-of-State sales are sales "Within Illinois" renders it unconstitutional under the commerce clause of the Federal Constitution and the due process clause of the Federal and Illinois constitutions. *McLeod,* which held that Arkansas could not apply a sales tax to sales of personal property consummated outside the State but delivered in Arkansas, is clearly distinguishable. The formula applied here is not a sales tax, but is a method of measuring the business activity within this State of a corporation doing multistate business. *Scott & Williams, Inc. v. Board of Taxation* (1977), —— N.H. ——, 372 A.2d 1305.

Plaintiff cites *Northwestern States Portland Cement Co. v. Minnesota,* 358 U.S. 450, 3 L. Ed. 2d 421, 79 S. Ct. 357, for the proposition that "net income from the interstate operations of a foreign corporation may be subjected to state taxation provided the levy is not discriminatory and is properly apportioned to local activities within the taxing State forming sufficient nexus to support the same" (358 U.S. 450, 452, 3 L. Ed. 2d 421, 424, 79 S. Ct. 357, 359) and then argues that to treat as sales in Illinois those in which both the origin and destination of the goods are outside Illinois would obviously transcend the requirements of nexus set forth in *Northwestern States.* On this record we cannot determine what plaintiff's business activity in this State has been with respect to these "drop-shipment" sales, and this can be determined in a hearing before the Department. We hold, however, that the mere fact that both the origin and destination of these sales were outside Illinois does not show that there were not sufficient local activities within Illinois to form a sufficient nexus between the Illinois income tax and transactions in Illinois by which the tax is measured.

Plaintiff also argues that assigning these "drop-shipment" sales to Illinois can result in double taxation. It is only those out-of-State "drop-shipment" sales in which plaintiff is not taxable either in the State of origin or destination that are being assigned to Illinois, and this obviously cannot result in double taxation.

We consider next the second type of "direct" or "drop-shipment" sales made by plaintiff. In these transactions tangible personal property is shipped by plaintiff's supplier from the supplier's inventory in Illinois to a purchaser in a State in which plaintiff is not taxable. Although these transactions fall squarely within the language of section 304(a)(3)(B)(ii) plaintiff contends that whether its supplier fills the order from the supplier's inventory in Illinois or in another State is within the discretion and control of the supplier, and that plaintiff has no control over the State from which the property is shipped. It contends that the General Assembly did not intend to include in the numerator of its sales factor this type of sale where the seller has no control over the place from which the goods are shipped. There is no evidence that plaintiff has no control over the State of origin of its "drop-shipment" sales, but, in any event, we hold that it is immaterial. We are unable to read into section 304(a)(3)(B) the "business activity" test suggested by *amici curiae* and are equally unable to read into it the "control" test suggested by plaintiff.

Plaintiff contends that its supplier's selection of Illinois as the place from which to make shipment does not supply the nexus required to make those sales includable in the numerator of its sales factor. We have already held that the supplier's selection of an out-of-State inventory from which to make shipment to an out-of-State customer does not of itself show insufficient nexus to render those sales includable, and it follows that the supplier's selection of Illinois as the place from which to make shipment does

not of itself show insufficient nexus.

Although we hold that the circuit court erred in holding that plaintiff's action was premature, it was correct in dismissing it. For the reasons stated the judgment is affirmed.

*Judgment affirmed.*