388 So.2d 596 (1980)
DEPARTMENT OF REVENUE, and Department of Banking and Finance, Appellants,
v.
U.S. SUGAR CORPORATION, Appellee.
UNITED STATES SUGAR CORPORATION, Appellant,
v.
DEPARTMENT OF REVENUE and Department of Banking and Finance, Appellees.
Nos. MM-389, NN-467.
District Court of Appeal of Florida, First District.
September 11, 1980.
Rehearing Denied October 20, 1980.
*597 Jim Smith, Atty. Gen., and Cecil L. Davis, Jr., Asst. Atty. Gen., Tallahassee, for Dept. of Revenue and Dept. of Banking and Finance.
K. Lawrence Gragg of Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, for U.S. Sugar Corp.
SHAW, Judge.
The taxpayer, United States Sugar Corporation, has a division which raises and sells cattle to buyers throughout the United States. All cattle are sold f.o.b. Clewiston, Florida, the location of the corporation's ranch, purchaser providing transportation from Clewiston to the point of final destination.
Based upon the taxpayer's interpretation of § 214.71(3)(a), Florida Statutes (1977), which reads in pertinent part as follows, a refund was sought:
Sales of tangible personal property are in this state if the property is delivered or shipped to a purchaser within this state, regardless of the f.o.b. point or other conditions of the sale.
The Department of Revenue denied the claim and the taxpayer filed a petition for formal proceedings under § 120.57(1), Florida Statutes, challenging the Department's position. Subsequent to the filing of the petition it was brought to the Department's attention that the cattle had been shipped by private contract carriers. In refusing a refund the Department advised the taxpayer that:
It was determined that cattle were shipped via commercial carrier. Further, it was ascertained that these carriers were "contract carriers" and not "common carriers". Because the purchaser could redirect shipment of cattle by contract carrier (independent cattle haulers and chartered aircraft), the sales are deemed to have been made in Florida at the point where carrier took possession of cattle. The contract carrier, under the described circumstances, is acting as purchaser's agent. In the capacity of special agent for purchaser, the carrier accepted delivery of the cattle in Florida. (Tax Audit Statement)
Following this position statement U.S. Sugar filed a petition for formal proceedings to determine the validity of a rule pursuant to § 120.56, Florida Statutes, asserting that the Department's policy, as set forth in the tax audit statement, constituted a rule not properly promulgated. The petitions were consolidated, and the hearing officer entered an order in the § 120.56 proceeding and a recommended order in the § 120.57(1) proceeding.
In the recommended order the hearing officer found that had the cattle been picked up by a common carrier for shipment outside of Florida the Department would have held that the sales were out-of-state, but because the cattle were picked up by contract carrier the Department classified them as in-state and directed its auditors to so conclude on all audits. The Department rejected the recommended order and submitted a proposed substitute order which was adopted as the final order.
In light of testimony by Department personnel that the only reason the cattle sales in issue were treated as in-state sales was because they were shipped by contract carrier, it is difficult to accept the Department's argument that its policy of classifying sales on the basis of the type of carrier utilized is not a policy of general applicability. Section 214.71(3)(a), Florida Statutes, makes no distinction between common carrier *598 and contract carrier. The Department, by making such a distinction, has placed upon the statute an interpretation that is not readily apparent from a reading of the statute, but impacts upon the taxpayer with the consistent effect of law. We agree with the hearing officer's conclusion that the statement is one of general applicability that implements, interprets or prescribes law, policy, procedure or practice requirements of the agency and falls squarely within the definition of a rule as defined by § 120.52(14), Florida Statutes (1977). State, Dept. of Com., Etc. v. Matthews Corp., 358 So.2d 256 (Fla. 1st DCA 1978); State, Dept. of Admin., Etc., Person. v. Harvey, 356 So.2d 323 (Fla. 1st DCA 1978); State, Dept. of Administration v. Stevens, 344 So.2d 290 (Fla. 1st DCA 1977). See also Fraser v. Lewis, 360 So.2d 1116 (Fla. 1st DCA 1978) and McDonald v. Dept. of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977).
Affirm MM-389.
Reverse NN-467.
SHIVERS, J., concurs.
ERVIN, J., specially concurring, with opinion.
ERVIN, Judge., specially concurring.
I agree with the conclusions expressed by the majority in these consolidated appeals, but because of the posture of the record,[1] I think it unnecessary to reach the issue presented in the appeal from the order declaring the agency's action an invalid rule because not regularly adopted. When as here the policy reasons supporting agency action are crystallized through adjudication,[2] I see no necessity to classify the action taken as either rule or order. The thrust of our inquiry should be directed simply to whether the final agency order, recognizable under Section 120.59, sufficiently explained the action taken, and, if it did so, whether it was "within the agency's exercise of delegated discretion." Section 120.68(7). If we find the action met the above conditions, then we should sustain it even though the agency's statement may have all the characteristics of Section 120.52(14)'s definition of rule. If on the other hand the action complied with neither condition, we should for that reason only reject it.
The department's justification for treating the sales as "in this state" under Section 214.71(3), was that if the corporation sells goods to an out-of-state buyer, and the goods are transported by the seller to the buyer, either by common carrier, contract carrier, or the seller's vehicles, it does not consider such sales as occurring in Florida because delivery between the seller and buyer did not occur until the goods were in interstate commerce. If, however, goods are picked up in Florida by the buyer's own trucks, or by private contract carriers hired by the buyer, the department considers the sales occur in Florida and are therefore includable within the numerator of the Florida sales factor, Section 214.71(3), because "delivery between the seller and buyer took place before the goods were shipped in interstate commerce and were shipped out of Florida."[3] Additionally, it views delivery to the buyer's agents under such circumstances as delivery to the buyer in this state.
*599 The department's interpretation of Section 214.71(3)(a) is supported by both the Uniform Commercial Code relating to sales transactions[4] and the Florida Revenue Act of 1949.[5] And its policy reasons were fully explained in its final order, but its interpretation of Section 214.71(3)(a)1 conflicts with the unambiguous legislative intent that the disputed sales, occurring in the manner described, are taxable only by the state where the goods are shipped.
Florida's income tax code is partially derived from the Uniform Division for Income Tax Purposes Act (UDITPA). Specifically, Section 16 of UDITPA provides:
Sales of tangible personal property are in this state if:
(a) the property is delivered or shipped to a purchaser, other than the United States Government, within this state regardless of the f.o.b. point or other conditions of the sale; or
(b) the property is shipped from an office, store, warehouse, factory or other place of storage in this state and (1) the purchaser is the United States government or (2) the taxpayer is not taxable in the state of the purchaser.
During the formulation of the Uniform Act, approved by the National Conference of Commissioners on Uniform State Laws in 1957, three factors were considered necessary to determine each state's apportionment formula: property, payroll and sales. Lynn, The Uniform Division of Income for Tax Purposes Act, 19 Ohio St.L.J. 41, 47 (1958). The question of how to assign sales of tangible personal property was the most controversial item before the conference. Id. at 49. It considered four different tests: (1) the sales destination test, attributing sales receipts to the state in which the goods are shipped or delivered to the customer; (2) the sales origin test, attributing sales receipts to the state of the factory, warehouse, or office from which the goods are shipped; (3) the sales office negotiation test, attributing such receipts to the state where the sale was principally negotiated, and (4) the sales activity test, attributing them to the state where the sales employees principally conduct their selling activities. J. Hellerstein and W. Hellerstein, State and Local Taxation: Cases and Materials 459 (4th ed. 1978).
The draftsmen's adoption of the destination test, reflected in Section 16(a), UDITPA, sought to give recognition to the consumer state's contribution to the production of the corporation's income. Pierce, The Uniform Division of Income for State Tax Purposes, 35 Taxes 747, 780 (1957). While recognizing that the origin test was the preferred choice of the manufacturing states, the "conference was of the opinion that [the adoption of such test] would merely duplicate the property and payroll factors which emphasize the activity of the manufacturing states, so that there would tend to be a duplication by such a sales factor." Pierce, supra at 780. Finally, other commentators commend the attribution of sales to the state of destination over all other tests, including the test dependent on where title passes, the latter criticized as dependent "wholly upon legal conclusions based upon construction of contracts, terms of waybills, customs in the business, evidence as to the intention of the parties, and other considerations having little or no relation to the problem of determining where income is earned... ." Keesling and *600 Warren, California's Uniform Division of Income for Tax Purposes Act, 15 UCLA L.Rev. 655, 670 (1968).
It clearly appears that the intention of the draftsmen of the Uniform Act was that sales of tangible personal property should be taxed only in the state of destination unless the buyer is the United States government or the taxpayer is not taxable in the state of the purchaser. Lynn, Formula Apportionment of Corporation Income for State Tax Purposes: Natura Non Facit Saltum, 18 Ohio St.L.J. 84, 98 (1957). In the latter case, such sales are assigned, or thrown back, to the state from which the goods are shipped. Id..
The intent of the Florida legislature closely parallels that of the draftsmen of UDITPA, and it goes even further than its prototype since it presently contains none of the throwback provisions of subsection (b). As originally enacted, Section 214.71(3) was almost identical to Section 16. See Ch. 71-359, Part IV, Laws of Florida. However, in response to the recommendation of the Special Tax Counsel to the Florida House of Representatives that the act be amended,[6] the legislature deleted the act's throwback provisions. See Section 2, Chapter 71-980, effective January 1, 1972. As amended, Section 214.71(3)(a)1 reflects the adoption of "a pure `destination test for determining the source of sales, ... ." England, Corporate Income Taxation in Florida: Background, Scope and Analyses, 14-15 (special publication of the Florida State L.Rev., 1972).
The department's interpretation of the statute was clearly at variance with the legislative intent that sales of tangible personal property shipped from the state of origin be included only within the sales factor numerator of the state of destination. If that state does not tax,[7] or lacks jurisdiction to tax,[8] or is otherwise prohibited by law to tax,[9] such sales are apparently not taxable anywhere.[10]
*601 Because the department's policy was not within its exercise of delegated discretion, I agree with the majority that the agency action must be set aside.
NOTES
[1] The taxpayer, a Delaware corporation, with its principal place of business in Florida, requested and received a Section 120.57(1) hearing and a Section 120.56 hearing, both of which were consolidated into one proceeding. Different orders were entered as to each, hence these separate appeals.
[2] See McDonald v. Dept. of Banking and Finance, 346 So.2d 569, 581 (Fla. 1st DCA 1977), where we recommended the "desirability of refining incipient agency policy through adjudication of individual cases... . [because] even the agency that knows its policy may wisely sharpen its purposes through adjudication before casting rules." (emphasis in original) See also White, etc. v. State, Dept. of Transp., 368 So.2d 411 (Fla. 1st DCA 1979) (Ervin, J., concurring and dissenting).
[3] All of the disputed sales took place under these circumstances. The taxpayer concedes that if delivery was made directly to the buyer in Florida, the sale occurred in Florida even though the property is later transported to another state by the buyer or his agents.
[4] The code provides that if the sale is described as f.o.b. the place of shipment, such is a delivery term and, in the absence of explicit agreement otherwise, the risk of loss passes to the buyer upon the delivery of the goods to the carrier, who is deemed to be the buyer's agent. Sections 672.319(1)(a), 672.504 and 672.509(1)(a). Moreover, if the contract requires the seller to send the goods to the buyer and does not require him to deliver at the place of destination, title passes to the buyer at the time and place of shipment. Section 672.401(2)(a).
[5] Section 212.06(5)(a) provides that sales of tangible personal property exported from this state are subject to the sales tax if the producer delivers the property "to a common carrier for shipment outside the state... ." See also Fla. Admin. Code Rule 12A-1.64(2)(b), imposing a retail sales tax upon the sale of tangible personal property within this state if "the dealer is required by the terms of the sale contract to deliver the goods to a common carrier... ."
[6] In suggesting the amendment to Section 214.71(3)(a), the Special Tax Counsel appended industry's position, stated in a memorandum prepared for the Committee on State Taxation, Council of State Chambers of Commerce by General Electric's consultant on state and local tax accounting, which argued that inclusion of sales within the sales factor of the formula should be strictly on a destination basis because "in order for the taxpayer to have an income to be distributed among the states, it is necessary that effort be devoted to selling the product. In other words, no matter how much is manufactured, there is no income to be apportioned until the product is sold." A. England, Report to the House on Corporate Income Tax Legislation, Part III, at 3-5 (November 3, 1971).
[7] UDITPA, § 3, not enacted in Florida, provides that a foreign taxpayer is taxable in another state if he is subject to a net income tax or would be required to pay a net income tax if that state adopted such a tax. The act assumes that every state in which the taxpayer does business levies an income tax, whether it does so or not, thereby assuring "that 100 per cent of the income of a multistate business theoretically will be taxed by the several states." Pierce, supra at 749.
[8] A state may constitutionally tax the income of a business operating in interstate commerce if there exists a "nexus" between the interstate activities and the taxing state, and a rational relationship between the income attributed to the state and the intrastate values of the enterprise. Exxon Corp. v. Wisc. Dept. of Revenue, ___ U.S. ___, 100 S.Ct. 2109, 65 L.Ed.2d 66 (1980) (48 U.S.L.W. 4687); Mobil Oil Corp. v. Commissioner of Taxes, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980). See also Moorman Mfg. Co. v. Bair, 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978), and Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959).
[9] Public Law Number 86-272 (codified at 15 U.S.C. § 381 (1976)) prevents a state from imposing a net income tax on foreign corporations deriving income from interstate commerce in the state if a corporation's only activities in the state were soliciting orders for sales of tangible personal property or effecting such sales through independent contractors.
[10] But see Illinois's approach to the problem, holding the relief provisions of UDITPA, § 18 (enacted in Illinois at Ill. Rev. Stat. ch. 120, § 3-304(e), and in Florida at Section 214.73), authorized the state to include in the numerator of a corporation's Illinois sales factor receipts from sales of property shipped both from and to states in which the corporation was not taxable. GTE Automatic Electric, Inc. v. Allphin, 68 Ill.2d 326, 12 Ill.Dec. 134, 369 N.E.2d 841 (1977). Although not the state of origin, Illinois was the principal place of business of GTE, and the court assumed that the Illinois act, like UDITPA, rendered all of a multistate enterprise's business income taxable. 68 Ill.2d at 339, 12 Ill.Dec. 134, 369 N.E.2d at 847. See also analysis of the case by Hellerstein, Construing the Uniform Division of Income for Tax Purposes Act: Reflections on the Illinois Supreme Court's Reading of the "Throwback" Rule, 45 Univ. of Chicago L.Rev. 768 (1978).