LAKEHEAD PIPE LINE COMPANY, INC., Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant.

First District (5th Division)   No. 1—88—0726

Opinion filed September 29, 1989.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Rita M. Novak, Assistant Attorney General, of Chicago, of counsel).

J. Robert Barr, of Sidley & Austin, of Chicago, Thomas J. Phillips, of Milwaukee, Wisconsin, and Walter Hellerstein, of University of Georgia Law School, of Athens, Georgia (Roger C. Minahan and Michael J. Collard, both of Minahan & Peterson, S.C., of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

This appeal follows reversal of the administrative decision of the Illinois Department of Revenue denying plaintiff corporate income tax refunds for years 1973 through 1977, inclusive.

We reverse.

Lakehead Pipe Line Company, Inc. (Lakehead), is a Delaware corporation with its principal office located in Superior, Wisconsin. Lakehead is wholly owned by Interprovincial Pipe Line, Ltd. (Interprovincial), a Canadian corporation. Lakehead owns and operates, as an interstate and foreign common carrier subject to Federal regulation, a pipeline system which transports crude petroleum and other liquid hydrocarbons owned by others.

Lakehead began operations in 1950. At that time, Lakehead's pipeline extended to North Dakota, Minnesota, and Wisconsin. In 1954, the pipeline system was extended into Michigan, and, in 1962, a branch line was constructed into New York. The portion of the pipeline directly at issue in this appeal was added in 1968 and extends from Superior, Wisconsin, through Illinois, to Griffith, Indiana. The length of pipeline in Illinois is 115.6 miles long. In 1969, the pipeline

was extended from Griffith to Sarnia, Canada. The total length of Lakehead's pipeline in the United States is 2,600 miles.

At all times pertinent to this appeal, section 304(d)(2) of the Illinois Income Tax Act (Act) (Ill. Rev. Stat. 1977, ch. 120, pars. 1—101 through 17—1701) provided:

> "[B]usiness income derived from transportation by pipeline shall be apportioned to this State by multiplying such income by a fraction, the numerator of which is the revenue miles of the person in this State, and the denominator of which is the revenue miles of the person everywhere. For the purposes of this paragraph, a revenue mile is the transportation by pipeline of 1 barrel of oil *** the distance of 1 mile for a consideration."[1] (Ill. Rev. Stat. 1977, ch. 120, par. 3—304(d)(2).)

Section 304(e) further provided:

> "If the allocation and apportionment provisions of subsections (a) through (d) do not fairly represent the extent of a person's business activity in this State, the person may petition for, or the Director may require, in respect of all or any part of the person's business activity, if reasonable:
>
> (1) Separate accounting;
>
> (2) The exclusion of any one or more factors;
>
> (3) The inclusion of one or more additional factors which will fairly represent the person's business activities in this State; or
>
> (4) The employment of any other method to effectuate an equitable allocation and apportionment of the person's business income." Ill. Rev. Stat. 1977, ch. 120, par. 3—304(e) (now Ill. Rev. Stat. 1987, ch. 120, par. 3—304(f)).[2]

In June of 1970, the Illinois Director of Revenue, pursuant to the alternative allocation provision of section 304(e), permitted Lakehead to apply a two-factor formula for apportioning Illinois corporate income tax instead of the statutory one-factor barrel mile apportionment formula of section 304(d). In addition to the number of barrel miles, the two-factor apportionment formula incorporated a property factor based on a ratio of the Illinois based assets used by Lakehead in its business in Illinois to the total used by Lakehead throughout its

---

[1]The term "barrel mile(s)" is used in place of the statutory term "revenue mile(s)" in the record and by the parties in their briefs on appeal. For purposes of this opinion, we also refer to the movement of one barrel of oil over the distance of one mile as a "barrel mile."

[2]To avoid confusion, throughout the opinion we refer to the alternative allocation provision of section 304 of the Act by its codification in subsection (e).

system. Lakehead had sought permission to use the two-factor formula for Illinois apportionment purposes because, at that time, it was using the two-factor formula in all other States in which it did business.

In 1973, the Wisconsin Department of Revenue required Lakehead to use a three-factor apportionment formula for corporate income tax purposes. In addition to the factors contained in the two-factor formula, the three-factor formula incorporated a factor for Lakehead's payroll. Lakehead was required to apply the three-factor formula in Wisconsin retroactively to 1969.

Lakehead thereafter sought permission, in each State in which it did business, to apply the three-factor formula in order to achieve uniformity and to eliminate the possibility of double taxation. Commencing with the 1976 tax year, all States in which Lakehead did business, with the exception of Illinois, permitted Lakehead to use that apportionment formula.

From 1973 to 1977, Lakehead's Illinois corporate income tax was computed using the two-factor formula.[3]

In March of 1977, Lakehead initiated proceedings before the Illinois Department of Revenue (Department) to recover portions of taxes paid for calendar years 1973, 1974, 1975, 1976, and 1977. The refunds amounted to $17,370, $10,426, $19,813, $21,593, and $24,275, respectively, for the years at issue. Lakehead's refund claims were based on the assertion that taxes for those years should have been calculated using the three-factor formula. When, after six months elapsed from the filing dates of the refund claims, the Department did not issue a notice allowing or denying the refunds, Lakehead's claims were deemed denied by operation of section 909(e) (Ill. Rev. Stat. 1977, ch. 120, par. 9—909(e)) of the Act.

Lakehead subsequently filed timely written protests from denial of the refunds and sought a formal hearing before the Department. The hearing was held on June 27, 1985, and May 14, 1986.

At the hearing, the Department established its *prima facie* case through the admission into evidence of two lengthy stipulations of facts and attached exhibits. In support of its claims for refunds, Lake-

---

[3]Lakehead timely filed Illinois corporate income taxes for all years at issue. For calendar years 1973, 1974, and 1975, the Illinois Department of Revenue permitted Lakehead to compute taxes using the two-factor formula. For calendar years 1976 and 1977, Lakehead computed taxes using the three-factor formula but, following an audit, the Department deemed use of the three-factor formula an error and assessed deficiencies calculated upon the two-factor formula. Lakehead paid the deficiencies with interest.

head presented the testimony of Robert L. Nichols, its supervisor of taxes and accounting services, the relevant parts of which we summarize below.

Nichols testified that most of the crude oil received by Lakehead comes from the Canadian provinces of Alberta and Saskatchewan through Interprovincial's pipeline system. That oil is transported to destinations in the United States through Lakehead's pipeline system. Lakehead owns and operates approximately 40 pumping stations and numerous delivery points along the length of the pipeline. Two of the pumping stations and two of the delivery points are located in Illinois.

Lakehead's computers start and stop electrical units and open and close valves within Lakehead's pipeline system. The main-frame computer is located at Interprovincial's headquarters in Edmonton, Alberta, although Lakehead has similar units located in Superior, Wisconsin, and in Sarnia, Ontario. Lakehead also owns and operates "working" tanks in Minnesota, Wisconsin, and Indiana for mixing particular types of oil for delivery.

Nichols testified employees were needed to operate the pumping stations, although occasionally one employee might maintain and operate more than one station. Each of the stations has an assigned electrical supervisor. Lakehead employed "deliverymen" to operate the pipeline's valves and meters. Nichols explained that because Lakehead operated only two delivery points in Illinois, Lakehead needed fewer "deliverymen" in the State than other companies. Lakehead also employed heavy equipment operators and nine pipeline maintenance crews, eight employees per crew, throughout its system. Maintenance crews were located in Minnesota, Wisconsin, Michigan, and Indiana. The maintenance crews located in Fort Atkinson, Wisconsin, and Griffith, Indiana, both service Illinois.

In addition to operations associated with the physical movement of oil along the pipeline, Nichols stated Lakehead's operating headquarters were in Superior, Wisconsin. In 1977, Lakehead had 60 employees in that office's administrative, accounting, purchasing, engineering, legal, and employees' relations departments. Lakehead also employed a computer technician for its unit in Wisconsin. In addition to its Wisconsin offices, Lakehead maintained offices in Minnesota and Michigan.

Pursuant to an exhibit prepared for the hearing, Nichols established that Lakehead had the following number of employees in its operations, and in Illinois specifically, at December 31 of the years at issue:

| YEAR | EMPLOYEES | NUMBER OF EMPLOYEES IN ILLINOIS |
|------|-----------|-------------------------------|
| 1973 | 224 | 3 |
| 1974 | 339 | 3 |
| 1975 | 313 | 2 |
| 1976 | 318 | 2 |
| 1977 | 308 | 1 |

Another exhibit indicated the apportionment percentages associated with Lakehead's business activity in Illinois for the years at issue under each of the different formulas:

|              | 1973   | 1974   | 1975   | 1976   | 1977   |
|--------------|--------|--------|--------|--------|--------|
| One-factor % | 6.4727 | 6.0861 | 5.8666 | 5.8959 | 4.1219 |
| Two-factor % | 7.0289 | 6.7226 | 6.5823 | 6.4687 | 5.4803 |
| Three-factor % | 5.0275 | 4.8010 | 4.6287 | 4.5149 | 3.7739 |

On January 9, 1987, the Department issued its decision denying Lakehead's request for refunds. The Department determined that Lakehead was required to use the statutory one-factor barrel mile apportionment formula of section 304(d) of the Act, concluding Lakehead failed to meet its burden of showing that it was entitled to elect an alternative formula. The Department further concluded that it had been error to permit Lakehead to use the two-factor formula to apportion its taxes and determined that Lakehead was entitled to refunds for taxes paid under that formula. The Department awarded Lakehead refunds resulting from application of the one-factor formula in the amounts of $4,833 for 1973, $3,482 for 1974, $7,311 for 1975, $6,865 for 1976, and $19,277 for 1977.

Lakehead filed its complaint for administrative review of the Department's decision on February 6, 1987. Following a hearing on Lakehead's complaint, the circuit court reversed the Department's decision. In a "Memorandum of Decision," the circuit court ruled that Lakehead had met its burden of showing application of the one-factor barrel mile apportionment formula led to a grossly distorted result with reference to property use and employee activity. The court concluded Lakehead was entitled to use the three-factor formula to apportion taxes in Illinois for years 1973 to 1977 and granted Lakehead's refund claims. An order was entered on February 4, 1988, incorporating the memorandum.

The Department subsequently filed a motion for "Partial Reconsideration and Modification." In its motion, the Department argued that the administrative decision was limited in scope to the fairness of application of the one-factor formula. The Department asserted that the record had not been developed regarding the type of alternative

formula that should be used in apportioning Lakehead's taxes and urged the court to remand the matter for a hearing on that issue.

That motion was also denied by the circuit court in an order dated February 4, 1988. In its order, the court noted that the issue of whether an additional hearing to consider the appropriateness of the three-factor formula had not been raised either in the Department's brief or during arguments before the court. Further, the court observed, the record was "permeated with the three-factor formula contention." The court concluded that after Lakehead rebutted the Department's *prima facie* case, the Department failed to proceed with evidence regarding whether the three-factor formula was inappropriate and that the Department's failure at that time to raise the issue precluded a second opportunity to do so. This appeal followed.

OPINION

■ Generally, section 304(a) of the Act directs that multistate corporations doing business in Illinois must apply a three-factor apportionment formula, based on property, payroll, and sales when allocating business income to this State. (*General Telephone Co. v. Johnson* (1984), 103 Ill. 2d 363, 469 N.E.2d 1067.) However, as noted above, our legislature has determined that a different apportionment formula should apply to multistate corporations providing transportation services including, specifically, oil pipeline companies such as Lakehead. Under section 304(d), that allocation is to be computed according to a one-factor formula based on barrel miles. (See Ill. Rev. Stat. 1977, ch. 120, par. 3—304(d).) Nevertheless, the legislature also provided a relief provision under section 304(e) of the Act such that, where the statutory formulas, including that prescribed in section 304(d), do not "fairly represent" business activity in Illinois, adjustments in the statutory formulas may be made. See Ill. Rev. Stat. 1977, ch. 120, par. 3—304(e).

Put simply, the issue before us is whether the Department's conclusion that the statutory one-factor barrel mile formula of section 304(d) was proper as fairly representing the business activity of Lakehead in Illinois for the years at issue or whether an alternative allocation formula under section 304(e) was justified.

■ In assessing whether the statutory barrel mile formula should have been applied, we are guided by the Illinois Administrative Code (Administrative Code) (86 Ill. Adm. Code §§100.2000 through 100.9900 (1985)), provisions of which implement and are authorized by the Act. (See Ill. Rev. Stat. 1985, ch. 120, par. 14—1401.) Section 100.3700(a)(4) of the Administrative Code incorporates relevant con-

stitutional considerations in assessing the propriety of an allocation formula and specifically provides, regarding operation of subsection (e) of section 304 of the Act:

"This subsection permits a departure from the required methods applicable under \*\*\* Section 304(a) through (d) \*\*\* only where such methods do not accurately and fairly reflect business activity in Illinois. *An alternative apportionment method under this subsection may not be invoked, either by the Director or by a tax payer, merely because it reaches a different apportionment percentage than the regularly required formula.* However, if the application of the statutory formula will lead to *a grossly distorted result in a particular case,* a fair and accurate alternative method is appropriate. (See Norfolk & Western Railway Co. v. State Tax Commission[,] 390 U.S. 317[,] 88 S. Ct. 995 (1968).) The party (the Director or the taxpayer) seeking to utilize an alternative apportionment method has the burden of showing by clear and cogent evidence that the statutory formula would result in the taxation of extraterritorial values. (See Butler Bros. v. McColgan[,] 315 U.S. 501, 625, cf. 701 (1942).) The burden will be met only if the statutory formula is demonstrated to operate *unreasonably and arbitrarily in attributing to Illinois a percentage of income which is out of all proportion to the business transacted in this State.* (See Hans Rees' Sons, Inc. v. North Carolina ex rel[.] Maxwell, 283 U.S. 123, 51 S. Ct. 385 (1931).) Finally, the party seeking to use an alternative apportionment formula must prove that such method fairly and accurately apportions income to Illinois based upon business activity in this [S]tate." (Emphasis added.) 86 Ill. Adm. Code §100.3700(a)(4) (1985).

The record reveals that the primary business conducted by Lakehead in Illinois was limited primarily to the flow of oil over the 115.6 miles of pipeline located here. The functions most vital to the pipeline were performed in Edmonton, Alberta. Lakehead's main computer for facilitating the oil flow throughout the pipeline is located there. Lakehead maintained no "working" tanks or maintenance crews in Illinois. Nor did Lakehead maintain a district office in Illinois. Further, as summarized in the table above, Lakehead never employed more than three people in Illinois during any one of the years at issue.

In its brief on appeal, Lakehead concedes that the one-factor formula would fairly represent Lakehead's business activity if the only form of Lakehead's activity in Illinois consisted of barrels of oil moving through miles of pipeline. However, Lakehead argues, to the ex-

tent that there are other forms of business activity in Illinois, the one-factor barrel mile formula would represent Lakehead's business activity in this State only if other forms of activity are "roughly proportional" to the number of barrel miles in each State. Lakehead proceeds to argue that in measuring Lakehead's business activity we must consider services performed by Lakehead through its employees at pumping stations, receipt and delivery locations, working tanks, and at offices where the pipeline system is managed.

■■ We agree that Lakehead's use of capital assets and employee activity are important to determining the extent of Lakehead's total business activity and are not reflected in the one-factor barrel mile formula of section 304(d) of the Act. However, in determining whether an alternative allocation formula should be applied, those considerations become relevant only to the extent that application of the one-factor formula, to the exclusion of those considerations, "grossly distorts" Lakehead's business activity in Illinois.

As indicated above, Lakehead had, besides the pipeline itself, limited capital assets in Illinois, consisting of two delivery points and two pumping stations. The number of permanent employees in Illinois during any of the years in issue was little more than 1% of the total employee activity of the corporation.

■■ Further, after comparing the apportionment percentages associated with Lakehead's business activity under the three different formulas for each year in question, we cannot conclude that application of the statutory barrel mile formula operated to unreasonably and arbitrarily attribute to Illinois a percentage of income out of all proportion to the business transacted in this State. The apportionment percentages represented by the one-factor barrel mile formula actually fall within the range of apportionment percentages represented by the two- and three-factor formulas. The differences in the apportionment percentages between the one-factor and three-factor formulas over the years in issue are as follows:

| 1973 | 1974 | 1975 | 1976 | 1977 |
|------|------|------|------|------|
| 1.4452 | 1.2851 | 1.2379 | 1.3810 | 0.3480 |

We do not believe that range of apportionment percentage differences constitutes the type of gross distortion which would justify application of an alternative apportionment formula under section 304(e).

Lakehead contends in its brief on appeal that a taxpayer is entitled to an alternative apportionment formula under section 304(e) "whenever the originally imposed formula produces *any* distortion of business activity" (emphasis in original), citing *GTE Automatic Electric, Inc. v. Allphin* (1977), 68 Ill. 2d 326, 369 N.E.2d 841, as author-

ity for that proposition.

Pertinent here, in *GTE*, the supreme court considered whether section 304(e) of the Act could be properly used to include a particular factor in the sales factor under section 304(a) or whether section 304(e) could be used only to challenge the overall method of apportionment under section 304(a). Specifically at issue was whether the Department, pursuant to section 304(e), could command plaintiff to include "direct" sales (sales of tangible personal property to purchasers in States in which plaintiff was not taxable, shipped by suppliers from inventory either within Illinois or in a State in which plaintiff was not taxable) in the numerator of the sales factor of section 304(a).

The court observed that the sales factor of section 304(a), by its terms, did not apply to "direct" sales in which plaintiff was not taxable in either the State of origin or destination but concluded section 304(e) could be used to supply such factor. (*GTE*, 68 Ill. 2d at 339, 369 N.E.2d at 140.) Inclusion of that factor, the court reasoned, was suggested by a clear legislative intent to apportion business income of multistate corporations among taxing jurisdictions so as to avoid either an overlap or a gap in taxation. *GTE*, 68 Ill. 2d at 339, 369 N.E.2d at 140.

■ Lakehead's assertion that *GTE* can be read to permit application of an alternative apportionment formula pursuant to section 304(e) under circumstances other than that set out in section 100.3700 of the Administrative Code cannot be supported. First, in *GTE*, the supreme court was concerned only with whether or not an additional factor could be added, pursuant to section 304(e), to the general sales factor incorporated in section 304(a). The court did not directly address the circumstances under which operation of section 304(e) could be used in place of the statutorily imposed allocation formulas of sections 304(a) through (d). Further, nothing in the *GTE* opinion suggests the court, by acknowledging the intent to avoid overlap or gap in apportionment, was department from standards, as set out in section 100.3700 of the Administrative Code, for determining when a statutory allocation formula is proper.

Lakehead's position would seemingly justify operation of section 304(e) whenever the allocation formula applied in Illinois differed from that applied in other States where some aspect of a multistate's business activity in Illinois was left unaccounted for, resulting in some distortion in allocation. Clearly, that is not the applicable standard. While we understand the goal of avoiding overlap or gap in apportioning taxes for multistate corporations, we are equally aware our legislature is empowered to determine the allocation scheme to be applied and

that the chosen formula must be applied unless it unreasonably and arbitrarily attributed to Illinois a percentage of income out of all proportion to the business transacted.

Because we find no such arbitrariness under application of the one-factor barrel mile formula to Lakehead's particular situation, we must reverse the judgment of the circuit court.

Reversed.

PINCHAM and COCCIA, JJ., concur.