382 So.2d 1280 (1980)
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellant,
v.
The FLORIDA PSYCHIATRIC SOCIETY, INC., and John L. Mason, M.D., Appellees.
No. NN-238.
District Court of Appeal of Florida, First District.
April 16, 1980.
*1282 James G. Mahorner, Tallahassee, for appellant.
Kenneth F. Hoffman, of Rogers, Towers, Bailey, Jones & Gay, Tallahassee, for appellees.
LARRY G. SMITH, Judge.
The Department of Health and Rehabilitative Services appeals a final order entered in a rule challenge proceeding[1] filed by appellee, Florida Psychiatric Services, Inc., and Dr. John L. Mason, M.D., which found the Department's proposed rules 10D-73[2] and 10E-4.12(a)(b)(4)[3] invalid for lack of legislative authority. The issue presented on appeal is whether the Department is authorized by law to provide rules for the establishment, regulation and licensing of "crisis stabilization" and "intensive residential treatment" facilities, as alternatives to inpatient care under the Florida Mental Health Act, also known as the Baker Act. We adopt the findings, reasoning and conclusions of the hearing officer who determined that such alternative facilities are not within the statutory authority conferred upon the Department. The order appealed from is therefore affirmed.
The proposed rules designate the statutes relied upon as authority for their enactment and as the law being implemented[4]. Upon examination we have concluded, as did the hearing officer, that the statutes *1283 do not authorize the new facilities. The first of the statutes cited in the rule, Section 381.031(1)(g)(11), gives the Department power to adopt rules "consistent with law regulating ... [the] execution of any other purpose or intent of the laws enacted for the protection of the public health of Florida" (emphasis supplied). This provision confers no powers to regulate or carry out programs not otherwise provided for by substantive law. So far as licensing of facilities is concerned, the scope of the foregoing subsection is definitely limited by the next subsection, (h), of Section 381.031(1), which provides in part:
"... nothing herein shall be construed to authorize the department to require a permit or license, unless such requirement is specifically provided by law." (Section 381.031(1)(h), Florida Statutes).
As interpreted by the hearing officer, the Department has no authority to license facilities unless it is specifically given that authority by statute. We agree that such authority cannot be found in the general rule-making provisions of Chapter 381, Florida Statutes.
The hearing officer found no authority for the new facilities in Chapter 400, Florida Statutes, nor do we. Section 400.021(4) provides that facilities authorized under that Chapter (nursing homes and related health care facilities), "shall not include any place providing care and treatment primarily for the acutely ill" (emphasis supplied). A great deal of the testimony before the hearing officer dealt with the differentiation, in a medical sense, of one who is "chronically ill", as opposed to "acutely ill". After hearing extensive testimony, the hearing officer found that while a majority of mental, emotional and behavioral illnesses are of a chronic nature, the typical Baker Act mental patient is a person primarily experiencing acute manifestations or exacerbations of a mental, emotional or behavioral illness, and is therefore in a state of "acute illness". We agree with the hearing officer's analysis of the problem, because it is clear from the evidence that the condition of the patient at the moment mental health services are needed is the critical factor that governs how, by whom, and where such services should be provided. As one witness aptly expressed it, "acute is acute". The rules under consideration provide that the proposed new facilities are for those "who are acutely emotionally disturbed and who need immediate care" (Rule 10D-73.021(a)), and for "persons in such acute distress that their capacity to cope with their life circumstances has been suddenly and completely exceeded" (Rule 10D-73.022(b)(3)). Since facilities for treatment of the acutely ill are not authorized under Chapter 400, the proposed licensure and regulation of the new facilities is not authorized by that Chapter.
We next consider Section 394.453, Florida Statutes (1977), the "legislative intent" portion of the Baker Act, which contains the following provision:
"... The Department is directed to implement and administer mental health programs as authorized and approved by the Legislature, based on the department's annual program budget . ." .
We agree with the hearing officer's interpretation of the above statute, that only programs "authorized and approved by the Legislature" may be implemented and administered by the Department. Further, the additional language "based upon the department's annual program budget", does not mean that authorization and approval of new programs is to be accomplished simply by including them as a budgetary item for the Department in the annual Appropriations Act passed by the legislature. Item 616 of the 1978 Appropriations Act includes "up to $1,707,408 for 75% start-up funding of crisis stabilization programs and short-term residential programs". It is clear, however, that the Appropriations Act cannot be used as authority for the establishment and licensing of new programs and facilities not otherwise authorized by substantive law. Advisory Opinion to the Governor, 239 So.2d 1 (Fla. 1970); Dickinson v. Stone, 251 So.2d 268 (Fla. 1978); and Department *1284 of Administration v. Horne, 269 So.2d 659 (Fla. 1972).
We have examined the remaining statutory provisions primarily relied upon by the Department, and while we agree that the Department is given broad authority to carry out the purposes and intent of the legislature with respect to mentally ill persons, we find nothing in the statutes authorizing programs or facilities to which the rules adopted by the Department can reasonably be related. Citing Florida Beverage Corporation v. Wynne, 306 So.2d 200 (Fla. 1st DCA 1975), the Department argues that the "mental health law rule-making power" (appellant's brief, page 6), provides authority for the Department to make all rules reasonably related to the mental health program provided for under Chapter 394, Florida Statutes. In the Wynne case, rules enacted by the Division of Beverage, Department of Business Regulation, were found to be directly related to statutory provisions permitting and regulating the purchase of alcoholic beverages by vendors from other vendors. The Department urges the application of the principle stated in Wynne, supra, that where the empowering provision of a statute states simply that an agency may "make such rules and regulations as may be necessary to carry out the provisions of this Act", the validity of regulations promulgated thereunder will be sustained so long as they are reasonably related to the purposes of the enabling legislation, and are not arbitrary or capricious. The first difficulty we have with the Department's argument is the absence of specific "enabling legislation". The next difficulty we have is that in Chapter 394, the Baker Act, provision is specifically made for the emergency and temporary treatment of mentally ill persons. The statutes spell out with particularity the criteria which must be met in order for persons to be eligible for such treatment,[5] and the procedures which must be followed under a variety of circumstances and conditions, including emergency admission (Section 394.463(1)), court-ordered evaluation (Section 394.463(2)), voluntary admissions (Section 394.465), and involuntary hospitalization (Section 394.467). The rules under attack do not purport simply to carry out the purposes and intentions of the Baker Act as expressed in these statutory provisions. To the contrary, the rules themselves in effect attempt to amend the Act, by diverting persons eligible for services and treatment under the Act into an entirely different evaluation and treatment program. Under the proposed rule, persons who meet the statutory criteria for admission to a receiving facility on emergency conditions (Section 394.463(1)(a)), would first be reviewed or screened by the crisis stabilization unit (or by the emergency service of a community mental health center or clinic), and then referred to treatment on an out-patient or in-patient basis as determined by the crisis stabilization unit (or the emergency service). In this connection, one of the witnesses who testified for appellee-Florida Psychiatric Society stated that the concerns of the 450-member society included the prospect that "acute medical emergencies will be managed by minimally skilled lay people in substandard facilities". Our examination of the rules discloses radical departures from the procedures established under the prevailing law. For example, Section 394.463(1)(c), Florida Statutes (1977), provides that a patient who is admitted for emergency examination and treatment by a receiving facility shall be examined by a physician without unnecessary delay, and may be given such treatment as is indicated by good medical practice. In the proposed facilities, a person admitted must be "seen" by a physician within 24 hours of admission. Meanwhile, a person admitted to the crisis stabilization unit may receive a "physical assessment", defined by *1285 the rules as a general physical by one who may be a licensed practical nurse; and a physical assessment, as well as a "mental status evaluation", may be administered in the intensive residential treatment unit. There is no requirement that a patient be immediately released if hospitalization or further evaluation is not needed, as under Section 394.463(1)(d), Florida Statutes (1977). Furthermore, the rules are lacking in procedures for court determination of the necessity for treatment, which may include security rooms and partial or total restraints; and we think they are further lacking in considerations of due process for protection of the patient such as have been carefully incorporated into the Baker Act legislation. No doubt the proposed facilities have been given long and careful study, their existence and operation may be fully justified by a genuine need, and they may serve the laudable objective of diverting mentally ill persons from unnecessary and expensive hospitalization. On the other hand, there was testimony from a Florida psychiatrist of 17 years experience that while the rules are proposed as a cost-saving, cost-effective device, they will actually
"... dilute away the available state funds for treating the truly mentally ill individual. Instead, the funds will be diluted out to a general area of emotionally upset people, some of whom are psychotic and were intended by the legislature to be managed under the Baker Act".
We are not concerned, nor was the hearing officer, with the merit or lack of merit in the proposed rules, nor whether operation of the proposed facilities would be beneficial to the public. These are questions for the legislature, not the courts. We are concerned only with statutory authority or its absence. Our comparison of the rules and the statutes indicates that the rules do not merely implement, they effectively abrogate the statutes, to a marked extent. Administrative regulations must be consistent with the statutes under which they are promulgated, and they may not amend, add to, or repeal the statute. 1 Fla.Jur.2d, Administrative Law, Section 55.
The Department has no "inherent" authority, in the mental health field or any other, but only those powers specifically granted by statute. St. Regis Paper Company v. State, 237 So.2d 797 (Fla. 1st DCA 1970), affirmed 257 So.2d 253 (Fla. 1971). We cannot agree with the Department's position that the power to "designate" facilities (Section 394.457, Florida Statutes (1977)), is the power to "license". The Department's reliance upon State Board of Education v. Nelson, 372 So.2d 114 (Fla. 1st DCA 1979), is misplaced. In that case the power to issue teacher's certificates was not challenged; only the power to revoke certificates, once issued, was under attack. This court found that the unquestioned power to issue carried with it the power to specify the terms and conditions under which the certificates could be revoked.
Finally, the Department's argument for broad, virtually unlimited power in the mental health field is substantially weakened by the existence of specific legislative authorization for various kinds of medical and health care facilities. Statutory provision is made for licensing of nursing homes under Chapter 400, and for hospitals under Chapter 395. There is a provision for residential care for psychotic or severely emotionally disturbed children under Section 394.4781. There is also specific authority for the licensing and regulation of drug abuse treatment and education centers under Chapter 397, Florida Statutes.
We agree with the hearing officer's conclusion that the various provisions of Rule 10D-73 are not severable, and that both rules must be declared invalid in their entirety. The order appealed is therefore affirmed.
BOOTH, J., concurs.
ERVIN, J., dissents with opinion.
*1286 ERVIN, Judge, dissenting.
I disagree with the majority's narrow interpretation of the word "designate." I think, within the general context of Part I of Chapter 394 (Sections 394.451-394.4781), the word is synonymous with license. Designate is variously defined as "to call by distinctive title, term, or expression . . to indicate and set apart for a specific purpose, office, or duty." Webster's New Collegiate Dictionary (1976). License is defined as "a permission granted by competent authority to engage in a business or occupation... ." Id. Crisis stabilization and intensive residential treatment facilities are classified under the Baker Act as receiving facilities, meaning facilities designated by the Department to receive patients under emergency conditions and to provide short-term treatment. Section 394.455(10), Florida Statutes (1977). The Department's power to designate such facilities is clearly provided by statute. See Sections 394.457(8) and .461(2).
Its authority to designate was created by the enactment of the Baker Act in 1971, and it continued without any suggestion of alteration until 1977, when the legislature, describing the duties and powers of the Department, provided: "Nothing herein shall be construed to authorize the department to require a permit or license, unless such requirement is specifically provided by law." (e.s.) Chapter 77-258, Section 1, Laws of Florida. In my view the Department's power to set apart such treatment facilities for the purposes described in the rules has been specifically delegated to it by the above cited statutes under the Baker Act. In the absence of clear, unambiguous language that the legislature intended to remove the Department's authority to designate such facilities, HRS's power to so act, in my judgment, remains unrestricted.
While the 1977 legislature amended Section 381.031 by including the licensing provisions, it, and subsequent sessions of the legislature, left intact the Department's power to designate. I think it inconceivable that the legislature intended to revoke the Department's power to designate community treatment facilities by its later language generally describing the Department's powers. Statutes on the same subject should be harmonized when possible, but a statute dealing specifically with the subject takes precedence over another statute covering the same subject in general terms. State v. Young, 357 So.2d 416 (Fla. 2d DCA 1978). Moreover, in the event of conflict, the special statute will prevail in the absence of a clear legislative intent to the contrary. St. Petersburg v. Carter, 39 So.2d 804 (Fla. 1949).
Alternatively, I think at the very most, the licensing provisions in the rules could be stricken without invalidating the very justifiable programs created in them. It is a general rule of statutory interpretation that courts will uphold the remainder if that which is left is complete in itself and wholly independent of that rejected, assuming that the remainder is consistent with the intent of the legislature. Dade County v. Keyes, 141 So.2d 819 (Fla. 3d DCA 1962).
Finally, I see none of the due process problems envisioned by the majority. As observed in the hearing officer's findings, clients are not admitted directly to such community facilities, but are referred from other facilities, clinics or hospitals, or by court order, as required by the Baker Act. Sections 394.463,.465 and .467 are the heart of the Act and encompass all due process substantive and procedural safeguards for patients referred to HRS mental health facilities.
Since I find abundant legislative authority authorizing the Department to provide rules for the establishment, regulation and licensing of these facilities, I would reverse the order of the hearing officer and sustain as valid all the proposed rules.
NOTES
[1] Administrative Procedures Act, Section 120.54(4), Florida Statutes.
[2] Rule 10D-73 provides for the development, licensure and operation of two different types of facilities to be used as alternatives to inpatient care under the provisions of the Florida Mental Health Act, the Baker Act, Chapter 394, Florida Statutes. One facility is a "crisis stabilization facility", to provide emergency evaluation, temporary shelter and crisis-oriented treatment for primarily chronically mentally ill individuals who are in an acutely disturbed state and who may require care and treatment under Chapter 394, Part 1, Florida Statutes. Another facility, to be known as an "intensive residential treatment facility", would provide short term intensive residential care and treatment to acutely disturbed, mentally ill individuals.
[3] Proposed Rule 10E-412(8)(b)(4) expands an existing rule relating to Baker Act funding by establishing the fiscal management and funding process for the two alternative facilities proposed by Rule 10D-73.
[4] Rule 10D-73 refers to rule-making authority of the Department under Sections 381.031(1)(g)11, 394.457(5), 394.78(1), (2)(b), 400.23(2), and 893.01, Florida Statutes (1977); and as the laws being implemented Sections 394.453, 394.455(8), (10), 394.457(2), 394.66(1), (2), (3), (4), 394.78(2)(a), 400.011, 400.041(3), 400.062(1), (2), (3), (5), (6), 400.141, 400.141(2), 400.23(1), (2)(a), (b), (c) and (d), Florida Statutes (1977).

Rule 10E-4.12(8)(b)4 refers to rule-making authority under Sections 394.457(5), 394.78(1), (2)(b), and 381.031(1)(g)11, Florida Statutes (1977); and as the laws being implemented, Sections 394.66(1), (2), and 394.457(1), (2), Florida Statutes (1977).
[5] Section 394.463, Florida Statutes (1977), subparagraph (1)(a) Criteria: "A person may be admitted to a receiving facility on emergency conditions if there is reason to believe that he is mentally ill and because of his illness is:

"1. Likely to injure himself or others if allowed to remain at liberty; or
"2. In need of care or treatment and lacks sufficient capacity to make a responsible application on his own behalf, and an ex parte order is obtained authorizing the admission."