431 So.2d 1025 (1983)
DEPARTMENT OF REVENUE, State of Florida, Appellant,
v.
AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Appellee.
AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Appellant,
v.
DEPARTMENT OF REVENUE, State of Florida, Appellee.
Nos. AM-265, AO-147.
District Court of Appeal of Florida, First District.
April 27, 1983.
Jim Smith, Atty. Gen. and Jeff Kielbasa, Asst. Atty. Gen., Tallahassee, for Dept. of Revenue.
*1026 Susan B. Werth of Paul & Thompson, Miami, for American Tel. and Tel. Co.
ERVIN, Judge.
In these consolidated appeals, the Department of Revenue (Department) appeals a determination, pursuant to Section 120.56, Florida Statutes (1981), that a Department policy is an invalid rule, and American Telephone and Telegraph Company (AT & T) appeals from a final Department order, entered pursuant to Section 120.57, Florida Statutes (1981), in which assessments for corporate income tax deficiencies, totaling $1,138,158.00, were levied against AT & T. AT & T seeks reversal of the Department's order, contending that the Department's interpretation and application of various sections of Chapter 220, the "Florida Income Tax Code," is erroneous and contrary to Florida law. Finding this point to be dispositive, we reverse without passing on the remaining issues raised by both parties.
AT & T is the parent corporation of the "Bell System," a group of twenty-three associated telephone companies and related corporations, only two of which conduct business or have property within Florida and are thus subject to Florida's corporate income tax: Southern Bell Telephone & Telegraph Company and Western Electric Company, Inc. For the tax years 1972, 1973 and 1974, AT & T, together with its subsidiaries, filed consolidated returns for federal tax purposes and, as allowed by the Internal Revenue Code (IRC), AT & T received a deduction of 100% for dividend income received from its domestic subsidiaries. Florida's corporate income tax became effective in 1972, and AT & T accordingly filed, during the tax years 1972, 1973 and 1974, a separate, unconsolidated return for Florida tax purposes, declaring as income the same amount it had declared for federal tax purposes.
On April 10, 1978, the Department, upon concluding that AT & T was not entitled to deduct 100% of dividend income,[1] issued a notice of proposed deficiencies in the following amounts:

 1972 $304,103.00
 1973 387,429.00
 1974 439,626.00

AT & T protested and the parties attempted for some three years to settle the dispute. The Department eventually denied AT & T's protest on April 16, 1981, and administrative proceedings commenced. AT & T initially sought, pursuant to section 120.57, administrative review of the Department's issuance of its final notice of deficiencies. It later requested a section 120.56 hearing to determine whether Department policies, not promulgated as rules but generally applied, constituted invalid rules. Those proceedings were consolidated and on April 28, 1982, a recommended order was entered in the former proceeding which found the Department's proposed assessments to be contrary to law and recommended withdrawal of the deficiencies. A final order was entered in the latter proceeding in which it was found that the Department's policy, regarding taxation of dividend income, was a "rule" which, because not properly promulgated, amounted to an invalid exercise of delegated authority.[2] Finally, in an order entered August 4, 1982, the Department rejected the hearing officer's findings and conclusions in the 120.57 proceeding and upheld the deficiencies levied against AT & T.
*1027 In reaching the merits of the appeal from the section 120.57 hearing, we find it unnecessary to address the issues raised by the Department in challenging the hearing officer's conclusion that Department policy amounted to an invalid rule. Instead of attempting to classify such policy as either a rule, which must be promulgated, or an order, which is the result of adjudication,
[t]he thrust of our inquiry should be directed simply to whether the final agency order, recognizable under Section 120.59, sufficiently explained the action taken, and, if it did so, whether it was "within the agency's exercise of delegated discretion." Section 120.68(7). If we find the action met the above conditions, then we should sustain it even though the agency's statement may have all the characteristics of Section 120.52(14)'s definition of rule. If on the other hand the action complied with neither condition, we should for that reason only reject it.
Department of Revenue v. U.S. Sugar Corporation, 388 So.2d 596, 598 (Fla. 1st DCA 1980) (Ervin, J., specially concurring). As we have recently stated, "The time has long since passed (if ever it existed) that agency action was mechanically invalidated simply because no rule was in effect." Barker v. Board of Medical Examiners, 428 So.2d 720 (Fla. 1st DCA 1983). We turn instead to the issue of whether the Department's interpretation and application of the Florida Income Tax Code is erroneous and amounts to action outside the scope of the Department's discretion.
The Department's position is that the Florida tax code requires AT & T, and similarly situated corporations, to include within their adjusted federal income for Florida tax purposes dividend income that is not taxable for federal tax purposes. In other words, the Department insists that a corporation which is a member of an affiliated group of corporations must, for purposes of filing a separate tax return in Florida, recalculate its taxable income properly reported for federal tax purposes, so that its Florida taxable income reflects only an 85% deduction for dividend income received from its subsidiaries or affiliated corporations which are not subject to Florida taxation despite the fact that the corporation is entitled to a 100% deduction for such income under the IRC provisions. In this case, the dividend income that AT & T received from its 21 out-of-state subsidiary corporations would, under the Department's theory, be subject to the 85% deduction.
AT & T urges, and we agree, that the Department's position is contrary to the clear and unambiguous language of the act and the legislative intent behind Florida's tax code. The legislature has expressly stated that its intent in enacting Chapter 220 was to "utilize, to the greatest extent possible, concepts of law which have been developed in connection with the income tax laws of the United States... .", thus enabling Florida taxpayers to "piggyback" on the provisions of the IRC. Section 220.02(3), Florida Statutes (Supp. 1972); England, Corporate Income Taxation in Florida: Background, Scope, and Analysis, Symposium, Fla.St.L.Rev. 4, 10 (1972) [hereinafter: Corporate Income Taxation]. Accordingly, the Florida code is replete with references to federal tax concepts and definitions. Of particular importance in this case is the Florida definition of taxable income:
(2) For purposes of this section, a taxpayer's taxable income for the taxable year shall mean taxable income as defined in section 63 of the Internal Revenue Code and properly reportable for federal income tax purposes for the taxable year, but subject to the limitations set forth in paragraph (1)(b) with respect to deductions provided by sections 172 (relating to net operating losses), 170(d)(2) (relating to excess charitable contributions), 404(a)(1)(D) (relating to excess pension trust contributions), 404(a)(3)(A) and (B) (to the extent relating to excess stock bonus and profit-sharing trust contributions), 404(d) (relating to excess contributions under the 1939 code) and 1212 (relating to capital losses) of the Internal Revenue Code, except that, subject to the same limitations:
* * * * * *

*1028 (f) "Taxable income," in the case of a corporation which is a member of an affiliated group of corporations filing a consolidated income tax return for the taxable year for federal income tax purposes, shall mean taxable income of such corporation for federal income tax purposes as if such corporation had filed a separate federal income tax return for the taxable year and each preceding taxable year for which it was a member of an affiliated group, unless a consolidated return for the taxpayer and others is required or elected under § 220.131; ...
Section 220.13(2), Florida Statutes (Supp. 1972) (e.s.). An "affiliated group of corporations" is defined, for Florida tax purposes, as "... two or more corporations which constitute an affiliated group of corporations as defined in section 1504(a) of the Internal Revenue Code." Section 220.03(1)(a), Florida Statutes (Supp. 1972) (e.s.).
In filing its Florida tax returns for 1972, 1973 and 1974, AT & T therefore relied on the above sections of the Florida code and filed a separate return, reporting as its taxable income that amount of income which it would have reported for federal tax purposes had it filed a separate federal return. Because it was entitled under the IRC to a 100% deduction for dividend income received from all of its subsidiaries, the amount reported in Florida reflected that deduction. The hearing officer in her recommended order concluded, and we agree, that the clear language in the Florida code supports AT & T's position rather than that advanced by the Department. Where, as in this case, "the legislative intent as evidenced by a statute is plain and unambiguous, then there is no necessity for any construction or interpretation of the statute, and [we] need only give effect to the plain meaning of its terms." State v. Egan, 287 So.2d 1, 4 (Fla. 1973). See also Caloosa Property Owners Association, Inc. v. Palm Beach County Board of County Commissioners, 429 So.2d 1260 (Fla. 1st DCA 1983).
Although the plain meaning of sections 220.13(2) and 220.03(1)(a) compels a reversal of the Department's order assessing deficiencies against AT & T, we find it necessary to address the Department's remaining arguments. The Department seizes upon what it terms a departure from federal tax concepts to support its position that a 100% deduction for dividend income is allowable only if the distributing corporation, that is the corporation paying the dividend, is subject to Florida taxation. Federal tax concepts, of course, allow corporations such as AT & T to deduct 100% of "qualifying dividends" received from "includible corporations" within an "affiliated group."[3] Because section 220.03(1)(a) *1029 defines the term "affiliated group of corporations" for Florida purposes with reference to the IRC's definition in section 1504(a), there should be no question that AT & T and similar corporations are entitled to the same treatment of dividend income in Florida. The Department, however, asserts in its final order that
[s]ection 220.131, Florida Statutes, contains a Florida departure from the federal concepts of "includible corporations" and "affiliated groups," such that a subsidiary which is not subject to tax under the Florida Code is not a Florida "includible corporation" and therefore cannot be a member of the same Florida "affiliated group" of corporations.
Therefore, dividends received from affiliates not subject to the Florida code are not "qualifying dividends" for purposes of the 100% dividend received deduction because they are not paid by a Florida "includible corporation" which is a member of the Florida "affiliated group."
The Department's position must be rejected for two reasons. First, the Department's interpretation is inconsistent with the legislative history of the Florida tax code as compiled by former Justice Arthur J. England, Jr., who was in 1971 Special Tax Counsel for the House of Representatives. England, observing that the issue of taxation of dividend income was "the most controversial area in respect to the taxation of corporate net income," stated that he had, in preparing the draft of chapter 220 which was submitted to the House for consideration, "deliberately departed from the federal method of taxing dividends in order to develop community interest and technical input on the dividend question." England's Reports to House of Representatives: Report to the House on Proposed Corporate Income Tax Legislation, at 2-11a through 2-12 (November 3, 1971) [hereinafter: Report]. The proposed draft, which would have thus deviated from the federal treatment of dividend income, excluded from the definition of "taxable income" in section 220.13(2) those "... deductions provided by sections ... 243 and 244 (relating to certain dividends received) ... of the Internal Revenue Code... ." Report, supra at 1-9. An alternative draft amendment, for adoption by the legislature should it choose not to deviate from the federal treatment of dividend income, was also included within England's report and called for elimination of the above language. Report, supra at 2-18, Amendment No. 3. That the legislature chose to adopt the federal treatment of dividend income is evidenced by the absence of any limitations relating to such *1030 income in the final version of section 220.13(2).[4]
Finally, we find the Department's reliance on Florida's alleged departure from the federal concept of "affiliated group" in Section 220.131, Florida Statutes (1973), to be misplaced.[5] Although we recognize that Florida's extension of the privilege of filing consolidated returns to Florida parent corporations, along with their affiliated corporations both subject to and exempt from Florida taxation, is one of the four mandatory deviations from federal tax concepts embodied in the Florida code,[6] we do not find that deviation controlling in this case. See Corporate Income Taxation, supra at 12-13. Section 220.131 applies only to those corporations which either elect or are required by the Department to file consolidated returns in Florida. Because AT & T elected instead to file a separate return in Florida, and the Department did not choose to require the filing of a consolidated return, the provisions of section 220.131 are simply not applicable and may not be used circuitously to support the Department's otherwise tenuous position.
We conclude that the clear intent of the legislature, as 1expressed in chapter 220, is that "taxable income" for Florida tax purposes is the amount for which a corporation would be liable for federal tax purposes if the corporation is a member of an affiliated group of corporations, as defined *1031 by the Internal Revenue Code, and the corporation neither elects to, nor is required to file a consolidated return in Florida. Consequently, if the corporation is entitled to a 100% deduction for dividend income for federal tax purposes, it must also be entitled to that deduction for Florida tax purposes.
Because we find the Department's interpretation and application of chapter 220, under the facts of this case, to be clearly erroneous and to amount to an abuse of discretion, we accordingly VACATE the Department's final order and REMAND this cause for further proceedings not inconsistent with this opinion.
MILLS, J., concurs.
WENTWORTH, J., concurring specially and MILLS, J., concurs.
WENTWORTH, Judge, concurring specially.
I agree that we need not determine the issue raised as to the alleged rule, and that the department's order should be reversed, which conclusion may in my opinion be based simply on insufficiency of the statutory predicate for the assessments.
NOTES
[1] Of the twenty-three subsidiaries from which AT & T received dividend income for the years in question, the Department allowed 100% deductions for only those dividends received from Southern Bell and Western, while allowing 85% deductions for all other dividend income from the remaining twenty-one subsidiaries.
[2] AT & T contended that the following Department "policies" were in fact invalid rules:

(a) Federal income tax terms and definitions need not be used in the same manner, or given the same meaning by the Department, as they are under federal law.
(b) Petitioner and all similarly situated taxpayers are required to include in "adjusted federal income" dividend income that is not taxable income for federal income tax purposes.
The hearing officer concluded that only the second policy constituted a rule within the Administrative Procedure Act, which was invalid due to the fact that it was not promulgated as such.
[3] The pertinent provisions of the Internal Revenue Code provide:

SEC. 243. DIVIDENDS RECEIVED BY CORPORATIONS.
(a) General Rule.  In the case of a corporation, there shall be allowed as a deduction an amount equal to the following percentages of the amount received as dividends from a domestic corporation which is subject to taxation under this chapter:
(1) 85 percent in the case of dividends other than dividends described in paragraph (2) or (3);
(2) 100 percent, in the case of dividends received by a small business investment company operating under the Small Business Investment Act of 1958; (15 U.S.C. § 661 and following); and
(3) 100 percent, in the case of qualifying dividends (as defined in subsection (b)(1)).
(b) Qualifying Dividends.  (1) Definition.  For purposes of subsection (a)(3), the term "qualifying dividends" means dividends received by a corporation which, at the close of the day the dividends are received, is a member of the same affiliated group of corporations (as defined in paragraph (5)) as the corporation distributing the dividends, if 
(A) such affiliated group has made an election under paragraph (2) which is effective for the taxable years of its members which include such day, and either
(B) such dividends are distributed out of earnings and profits of a taxable year of the distributing corporation ending after December 31, 1963 
(i) on each day of which the distributing corporation and the corporation receiving the dividends were members of such affiliated group, and
(ii) for which an election under section 1562 (relating to election of multiple surtax exemptions) is not effective, or
(C) such dividends are paid by a corporation with respect to which an election under section 936 is in effect for the taxable year in which such dividends are paid.
SEC. 1504. DEFINITIONS.
(a) Definition of "Affiliated Group".  As used in this chapter, the term "affiliated group" means one or more chains of includible corporations connected through stock ownership with a common parent corporation which is an includible corporation if 
(1) Stock possessing at least 80 percent of the voting power of all classes of stock and at least 80 percent of each class of the nonvoting stock of each of the includible corporations (except the common parent corporation) is owned directly by one or more of the other includible corporations; and
(2) The common parent corporation owns directly stock possessing at least 80 percent of the voting power of all classes of stock and at least 80 percent of each class of the nonvoting stock of at least one of the other includible corporations.
As used in this subsection, the term "stock" does not include nonvoting stock which is limited and preferred as to dividends, employer securities (within the meaning for section 409A(1)) while such securities are held under a tax credit employee stock ownership plan, or qualifying employer securities (within the meaning of section 4975(e)(8)) while such securities are held under an employee stock ownership plan which meets the requirements of section 4975(e)(7).
(b) Definition of "Includible Corporation".  As used in this chapter, the term "includible corporation" means any corporation except 
(1) Corporations exempt from taxation under section 501.
(2) Insurance companies subject to taxation under section 802 or 821.
(3) Foreign corporations.
(4) Corporations with respect to which an election under section 936 (relating to possession tax credit) is in effect for the taxable year.
* * * * * *
I.R.C. §§ 243, 1504 (P-H 1980).
[4] In concluding that the legislature intended to treat dividend income in the same manner as under the federal code, we are persuaded by England's analysis of what he identifies as the four mandatory deviations from federal tax concepts: (1) the applicability of future federal tax amendments; (2) the privilege of filing consolidated returns by affiliated groups of corporations; (3) apportionment; and (4) taxation of interest income. England also states that the Florida code offers five optional deviations from federal concepts in the areas of installment sale transactions, operating and capital losses, capital transactions, small businesses and foreign source income. That the Florida treatment of dividend income thus does not deviate from the federal scheme is readily apparent. See Corporate Income Taxation, supra at 11-23.
[5] Section 220.131, Florida Statutes (1973), provides, in relevant part, that

(1) Subject to subsection (5), any corporation subject to tax under this code which is the parent company of an affiliated group of corporations may elect ... to consolidate its taxable income with that of all other members of the group subject to tax under this code and to return such consolidated taxable income hereunder, in which case all such other members must consent thereto in such manner as the department may by regulation prescribe. Any Florida parent company of an affiliated group of corporations may elect to consolidate its taxable income with all other members of the affiliated group, even though some of its members are not subject to tax under this code, provided:
(a) Each member of the group consents to such filing by specific written authorization at the time the consolidated return is filed;
(b) The affiliated group so filing under this code has filed a consolidated return for federal income tax purposes for the same taxable year; and
(c) The affiliated group so filing under this code is composed of the identical component members as have consolidated their taxable incomes in said federal return.
(2) Subject to subsection (5), the director may require a consolidated return ... if the filing of separate returns for such corporations would improperly reflect the taxable incomes of said corporations or of said group.
(e.s.)
To facilitate the operation of this statute, the Department has, by rule, defined "affiliated group of corporations" as "... a group of corporations which have the dual characteristics of being subject to the Florida tax and meeting the tests of affiliation prescribed in section 1504(a) of the Internal Revenue Code." Fla. Admin. Code Rule 12C-1.03(1)(a)1 (e.s.). The Department urges that we apply that definition, instead of the statutory definition of affiliated groups found in section 220.03(1)(a), in this case. We decline to do so for two reasons: First, AT & T did not elect to file a consolidated return pursuant to section 220.131 and we therefore see no reason to apply the provisions of that section to the facts of this case. Second, although the issue has not been raised by AT & T, we note that "[a]dministrative regulations must be consistent with the statutes under which they are promulgated, and they may not amend, add to, or repeal the statute." Department of Health and Rehabilitative Services v. Florida Psychiatric Society, Inc., 382 So.2d 1280, 1285 (Fla. 1st DCA 1980). We will therefore not apply a rule which clearly is inconsistent with the statutory definition of affiliated groups.
[6] See note 4, supra.