## THE CITRUS HILL MANUFACTURING COMPANY v STATE OF FLORIDA, DEPARTMENT OF CITRUS

Case No. 87-1611

State of Florida, Division of Administrative Hearings

December 9, 1987

### APPEARANCES OF COUNSEL

**Peter J. Winders** and **James J. Kennedy, III,** Carlton, Fields, Ward, Emmanuel, Smith, Cutler & Kent, P.A., for petitioner.

**Karl S. Steinmanis** for petitioner.

**J. Hardin Peters, Jr.,** Peterson, Myers, Craig, Crews, Brandon & Mann, P.A., for respondent.

**Kristen C. Chadwell,** General Counsel, Department of Citrus, for respondent.

### OPINION OF THE COURT

DIANE D. TREMOR, Hearing Officer.

### *RECOMMENDED ORDER*

Pursuant to notice, an administrative hearing was held before Diane

D. Tremor, Hearing Officer with the Division of Administrative Hearings, on September 24, 1987, in Lakeland, Florida. The issue for determination in this proceeding is whether the Department of Citrus may require the petitioner to eliminate the word "juice" from its labels for diluted citrus products produced, manufactured, packaged and distributed in Florida.

## INTRODUCTION

Pursuant to § 120.57(1), *Florida Statutes,* petitioner, the Citrus Hill Manufacturing Company, sought a hearing on the issue of whether the Department of Citrus may compel it to change the labels on its diluted citrus fruit products by removing the word "juice" from the labels. This proceeding was consolidated for hearing purposes with Division of Administrative Hearing's Case No. 87-3078R, bearing the same caption, which challenged the validity of Rule 20-66.001(4), *Florida Administrative Code.* The latter proceeding is the subject of a separate Final Order entered on this same date.

In support of its position that the Department may not lawfully ban the word "juice" from appearing on the labels of diluted citrus fruit beverages, petitioner presented the testimony of Charles Anthony Parsons, the manager of purchases for Citrus Hill Manufacturing Company (Citrus Hill); Richard J. Coomes, the regulatory affairs manager for the beverage products division of Proctor and Gamble; and Joseph Ottaviani, a vice president and regional manager with Burke Marketing Research. Petitioners' Exhibits 1, 2, 6 and 7 were received into evidence.

The respondent, Department of Citrus, presented the testimony of Douglas Hoffer, the former marketing director with the Department of Citrus, and Dr. Poonam Mittal, a market research coordinator with the Department of Citrus. The respondent's Exhibits A through D were received into evidence.

Official notice was taken of the documents listed in Hearing Officer's Exhibit 1. Subsequent to the hearing, both parties submitted proposed orders. To the extent that the parties' proposed findings of fact are not included in this Recommended Order, they are rejected for the reasons set forth in the Appendix hereto.

## FINDINGS OF FACT

Upon consideration of the oral and documentary evidence adduced at the hearing, the following relevant facts are found:

(1) Citrus Hill Manufacturing Company (Citrus Hill) is a wholly

218

owned subsidiary of Proctor and Gamble. Citrus Hill is in the business of producing, manufacturing, packaging and distributing citrus products throughout the United States. It's main product has been "Select" orange juice which is 100% orange juice. Its principle manufacturing facility is located in Frostproof, Florida. While Citrus Hill has four other manufacturing sites outside the State of Florida, its Florida plant is the only facility for manufacturing frozen products. While it can produce chilled products at its plants located outside Florida, Citrus Hill's Florida plant is necessary to supply the demand for its chilled products on a national basis.

(2) In an effort to expand its market, Citrus Hill developed three products which it produces and packs at its plant in Frostproof, Florida. These products are and have been labeled as follows:

(a) "Lite Citrus Hill Orange Juice Beverage—60% Orange Juice,"

(b) "Lite Citrus Hill Grapefruit Juice Beverage—45% Grapefruit Juice," and

(c) "Plus Calcium Citrus Hill, Calcium Fortified Grapefruit Juice Beverage—60% Grapefruit Juice."

The "lite" beverages are reduced calorie diluted juice beverages with the addition of Nutrasweet. The third product is a diluted grapefruit juice beverage fortified with calcium.

(3) By a letter dated March 19, 1987, the Department of Citrus ordered Citrus Hill to change its diluted citrus products labels and informed Citrus Hill that the Department would enforce Rule 20-66.001(4), *Florida Administrative Code.* That rule provides

"Labels for diluted citrus products shall not include the word "juice" in the name of the product."

By a Final Order entered this same date, that Rule was declared to be an invalid exercise of delegated legislative authority.

(4) As noted above, Citrus Hill markets and sells its product line throughout the United States. It desires to utilize the names of its diluted juice products as indicated in paragraph two above for three reasons. First, Citrus Hill believes that its labeling is in compliance with federal law. Second, it believes that a product name which includes the word "juice" more fully informs the consumer of the nature of the product because it is more exact, descriptive and less ambiguous than any name not using the word "juice", such as "drink", "ade", or "beverage". Third, Citrus Hill fears that if it were unable to disclose through its product name that the product is primarily a juice product, it would be placed at a competitive disadvantage in the

national marketplace where non-Florida producers of similar products would not be bound by the challenged Rule's ban on the use of the word "juice" in the name of diluted juice products. While Citrus Hill could move its packaging facilities outside the state and utilize two products labels (one for Florida shipment and one for the non-Florida market), this alternative would be extremely expensive and would constitute a "distribution nightmare." Many distributors and large retail grocery stores work in multi-state regions and may not be willing to segregate and keep track of petitioner's different product labels for shipment in Florida and in non-Florida states.

(5) No other state in the United States prohibits the word "juice" in the labeling of diluted citrus juice products.

(6) In the late 1960's and early 1970's, the subject of proper labeling of diluted fruit juice beverages was under discussion by both the Florida Department of Citrus and the Federal Food and Drug Administration (FDA) under the Food, Drug and Cosmetic Act. The FDA ultimately rejected the proposal of prohibiting the word "juice" from the name of any product that was not 100% pure juice, and also rejected the approach of defining different products through "standards of identity." This latter method of labeling products would have defined a product as "ades" only if containing more than 10%, but less than 20%, juice, and various other category names based upon the percentage of fruit juice contained in the product. The prohibition against the word "juice" and the "standards of identity" proposals for the labeling of diluted juice products were rejected by the FDA in favor of a common or usual name approach, with a percent declaration of any characterizing ingredient.

(7) The pertinent federal regulations addressing the labeling of food products are contained in 21 C.F.R. Chapter 1. The more general regulation appears in 21 C.F.R. 102.5(a) and (b), and states, in pertinent part, as follows:

"Section 102.5 *General Principles.*

(a) The common or usual name of a food . . . shall accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients. The name shall be uniform among all identical or similar products and may not be confusingly similar to the name of any other food that is not reasonably encompassed within the same name. Each class or subclass of food shall be given its own common or usual name that states, in clear terms, what it is in a way that distinguishes it from different foods.

(b) The common or usual name of a food shall include the percentage(s) of any characterizing ingredient(s) or component(s) when the . . . component(s) . . . has a material bearing on . . . consumer acceptance or when the labeling . . . may otherwise create an erroneous impression that such . . . component(s) is present in an amount greater than is actually the case. The following requirements shall apply unless modified by a specific regulation in Subpart B of this part.

(1) The percentage of a characterizing ingredient or component shall be declared on the basis of its quantity in the finished product. . . .

(2) The percentage of a characterizing ingredient or component shall be declared by the words "containing (or contains) — percent (or %) — ". . . with the first blank filled in with· the percentage expressed as a whole number not greater than the actual percentage of the ingredient or component named and the second blank filled in with the common or usual name of the ingredient or component."

(8) The FDA has also promulgated regulations dealing with the labeling of specific nonstandardized foods, including diluted orange juice beverages and diluted fruit or vegetable juice beverages other than diluted orange juice beverages. With respect to diluted orange juice beverages, 21 C.F.R. Section 102.32 provides as follows:

"102.32. *Diluted Orange Juice Beverages.*

(a) The common or usual name of a non-carbonated beverage containing less than 100 percent and more than 0 percent orange juice shall be as follows:

(1) A descriptive name for the product meeting the requirements of Section 102.5(a) (e.g., diluted orange juice beverage or another descriptive phrase), and

(2) A statement of the percent of each juice contained in the beverage in the manner set forth in Section 102.5(b)(2). The percent of the juice shall be declared in 5 percent increments, expressed as a multiple of five not greater than the actual percentage of orange juice in the product, except that the percent of orange juice in products containing more than 0 percent but less than 5-percent orange juice shall be declared in the statement as "less·than 5" percent."

Diluted fruit or vegetable juice beverages other than diluted orange juice beverages are the subject of 21 C.F.R. Section 102.33,[1] which provides as follows:

---

[1] Apparently, enforcement of 21 C.F.R. Section 102.33 has been stayed by the FDA, and the agency has requested comments on the rule.

"102.33 *Diluted fruit or vegetable juice beverages other than diluted orange juice beverages.*

(a) The common or usual name of a noncarbonated beverage containing less than

100 percent and more than zero percent fruit or vegetable juice(s), other than only orange juice, shall be as follows:

(1) A descriptive name meeting the requirements of Section 102.5(a) (e.g., "diluted grape juice beverage", "grape juice drink", or another descriptive phrase) and

(2) A statement of the percent of each juice contained in the beverage in the manner set forth in Section 102.5(b)(2). The percent of the juice shall be declared in five percent increments, expressed as a multiple of five not greater than the actual percentage of juice in the beverage except that the percentage of any juice in beverages containing more than zero percent but less than 5 percent of that juice shall be declared in the statement as "less than 5" percent."

(9) The Department of Citrus has conducted two consumer surveys for the purpose of determining whether the word "juice" in a product name of a diluted citrus juice product is confusing or misleading. The Drossler study was conducted in 1972, and concluded that consumers are confused by the word "juice." However, that conclusion appears to be founded on the premise that the only proper use of the word "juice" is in the technical sense of "100% pure juice." In other words, what was measured in the survey was the consumer's failure to use the word "juice" in a limited sense to mean "100% pure juice." The surveyed consumer was asked to look at several products, and then state "what *kind* of product is this?" The products viewed consisted of several different dairy products and a citrus beverage. If the consumer used the word "juice" to describe the *kind* or product pointed to, he was treated as being confused if the product was less than 100% juice. No follow-up questions were asked concerning the consumer's understanding of the content of the product. The Chelsea study was conducted at the request of the Department of Citrus in 1987. It, too, concludes that there would be less consumer confusion is the word "juice" were eliminated from products comprised of less than 100% pure citrus juice. However, there was evidence that this study attempted to address too many issues, including consumer preferences, and that "question contamination" could well have occurred. This refers to the intentional or unintentional biasing of the interviewees by the ordering or phraseology of the questions asked. Both the Burke study and the Chelsea study indicate that consumers are not confused by a beverage label

222

using the word juice in the product name when it is accompanied by the declaration of the percentage of juice contained in the product.

(10) The Burke study was conducted on behalf of the petitioner in 1987. After conducting interviews of 1200 people from all age groups in six different cities throughout the United States, it concluded that there was no significant difference in consumer confusion between the use of the word "juice" and "beverage" in the product name when the percentage of citrus juice content is indicated on the label. In other words, whether the label identified the product as a "juice beverage" or a "beverage", the respondents were able to determine the amount of actual juice contained in the product.

## CONCLUSIONS OF LAW

As a producer, manufacturer, packager and distributor of citrus products and diluted citrus beverages in Florida and throughout the United States, the Citrus Hill Manufacturing Company's substantial interests are at stake when the Department of Citrus issues a directive or order governing the label contents of its products. Petitioner thus has standing, pursuant to Section 120.57, *Florida Statutes,* to seek an administrative hearing challenging the validity of the Department's action of attempting to prohibit the word "juice" from appearing on the label of any diluted citrus product manufactured or labeled by the petitioner in Florida.

Petitioner challenges the Order of the Department to change its labels on the same grounds as it challenged the validity of Rule 20-66.001(4), *Florida Administrative Code.* Just as an administrative agency may not adopt rules which exceed or are in conflict with its delegated legislative authority, neither may it enter orders or directives which exceed or are in conflict with its statutory authority. Petitioner contends that the Department's action of prohibiting the word "juice" in labels for diluted citrus beverage products is unlawful because it conflicts with the respondent's statutory grant of authority, it is not an appropriate regulatory measure to achieve the statutory goals and it bears no rational relationship to the purposes and goals of the Florida Citrus Code.

The respondent Department of Citrus urges that the challenged action is reasonable, rational and is within its statutory authority. It is further urged that the federal rules are neither mandatory, preemptive or repugnant to Florida's position regarding the labeling of diluted citrus products.

For the same reasons that Rule 20-66.001(4) constitutes an invalid

**223**

exercise of delegated legislative authority, the Department's order or directive to the petitioner to change its labels in accordance with that rule is unlawful and invalid.

The legislature recognized that the citrus crop is the major agricultural enterprise in Florida and enacted the Florida Citrus Code to protect health and welfare and to stabilize and protect the citrus industry. Section 601.02(1), *Florida Statutes.* Other purposes for the enactment of the Citrus Code include the protection and enhancement of the quality and reputation of Florida citrus fruit in domestic and foreign markets, the stabilization of the citrus industry, the protection of the public against fraud, deception and financial loss through unscrupulous practices and haphazard methods of processing and marketing, and the promotion of the general welfare of the citrus industry. Section 601.02(3), (5) and (6), *Florida Statutes.*

To effectuate the purposes and intent of the Citrus Code, the Legislature bestowed upon the Department of Citrus broad authority to adopt rules and orders in order to exercise and perform its duties under Chapter 601. See Section 601.10(1), *Florida Statutes.* With regard to the labeling of citrus fruit products, the Department was delegated the authority to prescribe rules and regulations

> "provided, however, that no standard, regulation, rule, *or order* under this section which is repugnant to any requirement made mandatory under federal law or regulations shall apply to citrus fruit . . . products . . . which are being shipped from this state in interstate commerce. . . . (Emphasis supplied)

Section 601.11, *Florida Statutes.* That same section goes on to provide that the Department's regulations, rules *and orders* with regarding to the marking of citrus fruit products

> "shall, when not inconsistent with state or federal law, have the force and effect of law."

It is the respondent's position in this proceeding that the federal rules regarding the general labeling of foods and the specific labeling of diluted fruit juice beverages are not mandatory and are thus not preemptive of Florida rulemaking or directives on the same subject. Whether those portions of the federal rules are or are not preemptive, thus rendering the inconsistent Florida position on the subject invalid as a violation of the Supremacy Clause of the United States Constitution, is not and need not be determined in this proceeding. The statute enabling the respondent to act in the area of the marking and labeling of citrus products prohibits action repugnant to mandatory requirements of federal rules, and also prohibits orders which are inconsistent

224

with federal law. It was not necessary for the Legislature to instruct the Department of Citrus that it could not act in violation of the Supremacy Clause of the Constitution of the United States. The legislative intent is clear. The Department was given authority to adopt rules and orders not repugnant to requirements made mandatory under federal law or regulations and not inconsistent with federal law. Section 601.11, *Florida Statutes.*

There can be no doubt that both the general and the more specific federal regulations regarding the labeling of food and beverage products are mandatory. The federal regulations with respect to the labeling of food products proclaim that the common or usual name of a food "shall" accurately identify or describe the basic nature of the food and "shall" include the percentage of any characterizing ingredient. 21 C.F.R. Section 102.5(a) and (b). With respect to the labeling of diluted orange juice products, the federal rule proclaims that the name "shall be" a descriptive name for the product meeting the requirements of Section 102.5(a) and a statement of the percent of each juice contained in the beverage. 21 C.F.R. Section 102.32. The labeling of diluted juice beverages other than orange juice is similarly prescribed in mandatory terms in 21 C.F.R. Section 102.33.

The Department's action of banning the word "juice" from the labeling of diluted citrus products is both repugnant to and inconsistent with the federal rules. Where the general federal rule requires a common or usual name, in as simple and direct terms as possible, along with the percentage declaration of any characterizing ingredient; the Department position would prohibit both the common name and a percentage declaration. Likewise, the more specific federal rules pertaining to diluted juice beverages require both a descriptive name for the product and a statement of the percent of each "juice" contained in the product. It would be impossible to comply with these federal requirements without utilizing the word "juice." Thus, the Department's position is both repugnant to and inconsistent with the federal regulations set forth in 21 C.F.R. 102.5(a) and (b), 102.32 and 102.33.

An agency has no inherent authority, but has only those powers granted by statute. The principles applicable to an agency's authorit to adopt rules are equally applicable to an agency's authority to enter orders or take other forms of agency action. Administrative regulations must be consistent with the statutes under which they are promulgated, and they may not add to, amend or repeal the statute, *Department of Health and Rehabilitative Services v. The Florida Psychiatric Society, Inc., et al.,* 382 So.2d 1280 (Fla. 1st DCA 1980), nor can an administrative rule enlarge, modify or contravene the provisions of a statute.

**225**

*The Department of Health and Rehabilitative Services v. McTigue,* 387 So.2d 454 (Fla. 1st DCA 1980). Action which is directly repugnant to and inconsistent with the federal regulations on the same subject clearly contravenes the legislative delegation of authority to the Department to take actions regarding the marking and labeling of citrus products. As such, the challenged action exceeds the Department's statutory authority, and is unlawful and invalid.

Even if there were no federal regulations concerning the labeling of foods and diluted citrus juice products, the agency action in question does not appear to be reasonably related to the purposes of the enabling legislation. The purposes of the Citrus Code are to both protect and promote the citrus industry and to protect consumers from fraud or other deceptive practices. The petitioner in this proceeding has demonstrated that Citrus Hill, a Florida producer, packager and distributor of Florida citrus products in Florida and throughout the United States, would be severely disadvantaged economically and competitively if it were not able to include the word "juice" or list the percentage thereof, in its products containing less than 100% pure citrus juice. The studies performed on behalf of the Department of Citrus indicated a consumer preference for products containing "juice." No other state prohibits the word "juice" from appearing on labels for diluted citrus fruit beverages. The federal law on the subject, as discussed above, requires the word "juice" to appear on the labels of diluted fruit juice beverages. By severely limiting the competitive strength of national distributors operating out of Florida, the challenged action does not "stabilize and protect the citrus industry of the state" (Section 601.02(1)), nor does it "promote the general welfare of the Florida citrus industry" (§ 601.02(6)). There was no evidence presented by the Department that the availability of diluted citrus juice beverages in the marketplace would adversely affect the sale of Florida citrus fruit.

A further purpose of the Citrus Code is the protection of consumers. It is difficult to imagine how the listing of a beverage by the common name of the fruit juice contained therein, together with a statement of the actual percentage of such fruit juice contained therein, could be more informative, truthful or accurate. Certainly, a label containing such information could not be considered an "unscrupulous practice" or a "haphazard method of marketing." See Section 601.02(5), *Florida Statutes.* The Department's position on this subject requires the choosing of an arbitrary word other than "juice," such as "drink," "ade" or "beverage," without denoting any attributes of the product. This requirement does not accurately or completely describe the product

226

offered for sale and thus does not protect the public against fraud, deception or financial loss. See Section 601.02(5), *Florida Statutes.* Indeed, where the characterizing ingredient in a product is citrus juice, it would be false and misleading to label the product as a "beverage," "ade" or "drink" without any designation of its citrus "juice" content. By communicating less information to consumers about the product offered for sale, the prohibition against the word "juice" for diluted citrus fruit products frustrates the legislative purpose of protecting consumers from unscrupulous practices, and bears no rational relationship to any other statutory provision of the Florida Citrus Code.

Even if the Department or the State of Florida has some interest in promoting products containing 100% pure Florida citrus juice (a fact not proven at the hearing), it has no power to prohibit the manufacture or sale of diluted juice products. It may not discourage the production and sale of diluted products by requiring potentially misleading or nondescriptive labeling or by requiring the labeling of a product in a manner which is inconsistent and in conflict with federal regulations.

It is interesting to note that the banning of the word "juice" from diluted citrus product labels conflicts with the remaining portions of Rule 20-66.001. Subsection (1) of Rule 20-66.001 requires that all Florida processed citrus products be labeled in compliance with established Florida standards and any other applicable "Federal food labeling requirements or regulations. Labeling may include any truthful and non-misleading qualifying adjectives." Subsection (2) of Rule 20-66.001 provides that where no Florida standards have been established, the label

"shall bear a factual and descriptive product name and shall include a statement in immediate conjunction with the product name which fully and truthfully describes the product and its ingredients."

And, subsection (3) of Rule 20-66.004 requires that labels for unsweetened single strength and concentrated citrus juices prominently show that the product is 100% juice. To single out diluted citrus products for a different manner of labeling which is not descriptive of the product or its ingredients conflicts with the remaining portions of the rule and finds no statutory support. In addition, any alleged "confusion" on the part of consumers should be cured by the regulatory requirement set forth in Rule 20-66.001(3) that single strength products be labeled "100%."

In summary, it is concluded that the Department's action of requiring the petitioner to remove the word "juice" from its diluted citrus product beverage labels conflicts with and exceeds the authority dele-

gated to the Department of Citrus by the legislature and bears no rational relationship to the stated purposes for the enactment of the Florida Citrus Code, and is therefore unlawful and invalid.

## RECOMMENDED ORDER

Based upon the findings of fact and conclusions of law recited herein, it is RECOMMENDED that the Department of Citrus rescind its order or directive to the petitioner to discontinue the use of the word "juice" in its labels for diluted citrus juice beverages.

Respectfully submitted and entered this 9th day of December, 1987, in Tallahassee, Florida.